ORIGINAL

FILED
FEB - 1 2007
U.S. COURT OF
FEDERAL CLAIMS

UNITED STATES COURT OF FEDERAL CLAIMS

GULF GROUP GENERAL ENTERPRISES CO. W.L.L.

Plaintiff,

VERSUS

THE UNITED STATES OF AMERICA

Defendant,

Case No.: 07- 82 C

# COMPLAINT

**NOW COME** plaintiff, Gulf Group General Enterprises Co. W.L.L. (hereinafter "Gulf Group"), and for its complaint against The United States of America (hereinafter "the Government"), avers as follows:

**1.**

At all pertinent times Plaintiff, Gulf Group, is a Kuwait corporation with its principal place of business in Kuwait City, Kuwait.

**2.**

At all pertinent times Defendant, the United States of America, was acting through the Department of the Army, U.S. Army Contracting Command SWA-Kuwait (ARCENT) at Camp Arifjan.

**3.**

Jurisdiction over this case is based on the Contract Dispute Act of 1978, 41 U.S.C. §601 *et seq.*, and the Tucker Act, 28 U.S.C. §1491 for claims against the United States.

**4.**

This is an action based upon the Army's denial of Gulf Group's certified claim submitted on

December 1, 2005 and received by the Contracting Officer Major John Cockerham on December 15, 2005. The Contracting Officer failed within sixty (60) days of receipt of the claim, or within a reasonable time thereafter, to issue a Final Decision as required under 41 U.S.C. §§605(c)(1) and (c)(3). The Contracting Officer's failure to issue a final decision within the required period is deemed to be a denial of the claim. This Court therefore has jurisdiction pursuant to the Contract Dispute Act.

**5.**

On November 1, 2004, the Government through the Department of the Army, U.S. Army Contracting Command SWA-Kuwait (ARCENT), Gloria Davis, awarded to Gulf Group a Fixed Price Service Contract No. W912D1-04-A-0052 (hereinafter "Master BPA,"attached hereto as Exhibit "A") for the procurement and supply of CENTCOM approved bottled water to base camps for the Operation Iraq Freedom (OIF) with a period of performance from September 24, 2004 through September 24, 2006.

**6.**

The Mater BPA provided that the supplies and services under the agreement shall be identified on individual purchases "Calls,"and that the contracting officer or their authorized representative shall designate the location for delivery therein. Accordingly, individual Calls were placed with Gulf Group by the government's contracting officer and or a duly authorized representative for the bottled water.

**7.**

In execution of the contract and individual Calls, Gulf Group immediately proceeded to acquire the bottled water and provide for its delivery to several camps as required by the Army, and

as specified in the contract and individual Calls by retaining the services of Expeditors Int'l KWI who supplied the trucks to carry the water.

**8.**

Further, through the period of performance, including November 1, 2004 through March 31, 2005, Gulf Group followed the U.S. Government's requirements for shipment of the bottled water. Specifically, the government required that the trucks carrying the water for delivery into the various destinations in Iraq traveled together with Army convoys. However, the Army convoys were delayed at several times through the entire period of performance, which in turn caused Gulf Group to incur demurrage on the trucks.

**9.**

At all pertinent times Gulf Group was fully supplied and staffed to perform under the contract and performed as required and in a timely manner. However, due to the Army's logistical convoy requirement and their delays Gulf Group incurred demurrage charges in the amount of KD 298,435.000 representing US$1,035,802.23 at the exchange rate of 1 KD @ $3.47078. A summary and detailed listing of the demurrage incurred and charged by Expeditors Int'l is included as Exhibit "B."

**10.**

The delays of the Army convoys were not attributable to Gulf Group but were entirely attributable to the U.S. Government.

**11.**

The Federal Acquisition Regulations (FAR) allow for reimbursement of extra expenses incurred for delays attributable or caused by an act or order of the Government, such as the

Government the logistical convoy requirements imposed for the delivery of the water by Gulf Group to Iraq.

**12.**

By virtue of its decision to delay the convoys, and as provided for under the FAR's, the government is required to compensate Gulf Group fully and to put Gulf Group in as good a position as it would have been had there been no delays by the convoys, including reimbursement for the demurrage incurred by Gulf Group which is the subject of this litigation, plus interest.

**13.**

On April 5, 2005, contracting officer Major Cockerham informed Gulf Group in an email that beginning April 1, 2005 the price per case of water would be increased to KD 2.578 to cover any future charges for demurrage that may be incurred after that day. (See email attached as Exhibit "C") Prior to this date the price per case of water was KD 2.400 (see representative sample of BPA Calls Nos. 003 and 004, attached hereto as Exhibits "D" and "E" respectively.) Further, in that email the Government clarified that the demurrage charges already incurred (from November 1, 2004 through March 31, 2005) would be reimbursed by the Government through the normal claims process. The increased price and compromise not to summit further demurrage charges was agreed by Gulf Group on or about April 6, 2005, as evidenced from the attached Exhibit "F,"

**14.**

Prior to the commencement of this action, and in compliance with FAR Part 49.206, found at 48 C.F.R. § 49.206, Gulf Group timely filed an administrative claim against the Government by serving on the Contracting Officer, Major John Cockerham, a Certified Claim and Settlement Offer which was signed for receipt by him on December 15, 2005 (attached hereto as Exhibit "G") for the

demurrage charges corresponding to the period from November 1, 2004 through March 31, 2005. More than 60 days have passed since the filing of Gulf Group's Certified Claim and Settlement Offer without the Contracting Officer issuing a final decision on Gulf Group's Certified Claim and Settlement Offer. Therefore, pursuant to 41 U.S.C. §§605(c)(1) and (c)(3), Gulf Group's claim is deemed denied and this lawsuit followed.

**WHEREFORE**, Plaintiff prays that:

I. Judgment be entered in favor of the Plaintiff, Gulf Group General Enterprises Co. W.L.L. and against The United States, in the amount of KD 298,435.000 (US$1,035,802.23), together with interest, costs and attorney fees; and

III. Plaintiff be awarded such other relief as it may be entitled to receive under the law.

Dated: January 31, 2007

Respectfully submitted,

ILIAURA HANDS (LA # 23115)
MILLER & WILLIAMSON LLC
3150 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
Telephone: (504) 525-9800
Telefax: (504) 525-9820
Email: ili@miller-llc.com

***Attorneys for Plaintiff, Gulf Group General Enterprises Co. W.L.L.***

PLEASE SERVE:

THE UNITED STATES
THROUGH THE CLERK OF COURT

EXHIBIT "A"

# ORDER FOR SUPPLIES OR SERVICES

PAGE 1 OF 28

| 1. CONTRACT/PURCH ORDER/ AGREEMENT NO. | 2. DELIVERY ORDER/ CALL NO. | 3. DATE OF ORDER/CALL | 4. REQ./ PURCH REQUEST NO. | 5. PRIORITY |
|---|---|---|---|---|
| W912D1-04-A-0052 | | 2004 Sep 28 | | |

**6. ISSUED BY** CODE W912D1
U.S. ARMY CONTRACTING COMMAND SWA-KUWAIT
HQ BLDG 210
CAMP ARIFJAN AE 09366

**7. ADMINISTERED BY** CODE
SEE ITEM 6

**8. DELIVERY FOB**
☐ DEST
☒ OTHER
(See Schedule if other)

**9. CONTRACTOR** CODE FACILITY SX183
GULF GROUP GENERAL ENTERPRISES CO. W.L.L
SALHIYA COMMERCIAL COMPLEX 4TH ENTRANCE 2
SAFAT, KUWAIT 13077

**10. DELIVER TO FOB POINT BY (Date)**
SEE SCHEDULE

**11. MARK IF BUSINESS IS**
☐ SMALL
☐ SMALL DISADVANTAGED
☐ WOMEN-OWNED

**12. DISCOUNT TERMS**

**13. MAIL INVOICES TO THE ADDRESS IN BLOCK**
See Item 15

**14. SHIP TO** CODE
SEE SCHEDULE

**15. PAYMENT WILL BE MADE BY** CODE

**MARK ALL PACKAGES AND PAPERS WITH IDENTIFICATION NUMBERS IN BLOCKS 1 AND 2.**

**16. TYPE OF ORDER**

| | | |
|---|---|---|
| DELIVERY/ CALL | | This delivery order/call is issued on another Govt. agency or in accordance with and subject to terms and conditions of above numbered contract. |
| PURCHASE | | Reference your quote dated<br>Furnish the following on terms specified herein. REF: |

ACCEPTANCE. THE CONTRACTOR HEREBY ACCEPTS THE OFFER REPRESENTED BY THE NUMBERED PURCHASE ORDER AS IT MAY PREVIOUSLY HAVE BEEN OR IS NOW MODIFIED, SUBJECT TO ALL OF THE TERMS AND CONDITIONS SET FORTH, AND AGREES TO PERFORM THE SAME.

NAME OF CONTRACTOR — SIGNATURE — TYPED NAME AND TITLE — DATE SIGNED (YYYYMMMDD)

☐ If this box is marked, supplier must sign Acceptance and return the following number of copies:

**17. ACCOUNTING AND APPROPRIATION DATA/ LOCAL USE**

| 18. ITEM NO. | 19. SCHEDULE OF SUPPLIES/ SERVICES | 20. QUANTITY ORDERED/ ACCEPTED* | 21. UNIT | 22. UNIT PRICE | 23. AMOUNT |
|---|---|---|---|---|---|
| | SEE SCHEDULE | | | | |

* If quantity accepted by the Government is same as quantity ordered, indicate by X. If different, enter actual quantity accepted below quantity ordered and encircle.

24. UNITED STATES OF AMERICA
TEL: [illegible]
EMAIL: [illegible]
BY: [illegible]
CONTRACTING / ORDERING OFFICER

25. TOTAL

29. DIFFERENCES

**26. QUANTITY IN COLUMN 20 HAS BEEN**
☐ INSPECTED ☐ RECEIVED ☐ ACCEPTED, AND CONFORMS TO THE CONTRACT EXCEPT AS NOTED

DATE — SIGNATURE OF AUTHORIZED GOVT. REP.

27. SHIP NO. — ☐ PARTIAL ☐ FINAL

28. DO VOUCHER NO.

30. INITIALS

31. PAYMENT — ☐ COMPLETE ☐ PARTIAL ☐ FINAL

32. PAID BY

33. AMOUNT VERIFIED CORRECT FOR

34. CHECK NUMBER

35. BILL OF LADING NO.

36. I certify this account is correct and proper for payment.

DATE — SIGNATURE AND TITLE OF CERTIFYING OFFICER

| 37. RECEIVED AT | 38. RECEIVED BY | 39. DATE RECEIVED (YYYYMMMDD) | 40. TOTAL CONTAINERS | 41. S/R ACCOUNT NO. | 42. S/R VOUCHER NO. |
|---|---|---|---|---|---|
| | | | | | |

Section B - Supplies or Services and Prices

BPA Master Dollar Limit: $10,000,000.00
BPA Call Limit: $7,000,000.00

Period of Performance: 28-Sep-2004 to 28-Sep-2006

FSC Codes:
8960

Section C - Descriptions and Specifications

SPECIAL INSTRUCTION

# TERMS AND CONDITIONS

## BLANKET PURCHASE AGREEMENT (BPA)

**1. AUTHORITY**: This Blanket Purchase Agreement is entered into under the authority of 10 USC 2304 and the Federal Acquisition Regulation Part 13.303, Blanket Purchase Agreements.

**2. DEFINITION**: A blanket purchase agreement (BPA) is a simplified method of filling anticipated repetitive needs for supplies or services by establishing "charge accounts" with qualified sources of supply.

**3. DESCRIPTION OF AGREEMENT**: The Contractor shall supply and deliver CENTCOM approved cases of bottle water (12 each, 1.5 liter bottles per case) or other sizes as required to locations in Kuwait if and when requested by a contracting officer (or the authorized representative of the contracting officer) during a two (2) year period of time. Only a Contracting Officer shall conduct negotiations or solicitation for prices and additional requirements. Supplies and services shall be identified on individual purchases (calls). A contracting officer or their authorized representative shall designate locations for delivery.

(a) Either party may modify or may cancel this Agreement, including Paragraphs a and b hereof, in its entirety by submitting a thirty (30) days written notice to the other party, except that the Government may cancel this agreement at any time if the parties fail to agree upon any deletion, amendment, or addition, a statute, Executive order, the FAR and/or this Supplement requires. No deletion, modification, addition to, or cancellation of this Agreement shall affect any contracts therefore entered into between the parties in which this Agreement or portion thereof has been incorporated by reference.

(b) This Agreement shall be reviewed, as a minimum, annually, before the anniversary of its effective date and revised to conform to the requirements of all applicable statutes, Executive Orders, the FAR and FAR Supplements. An agreement modifying this BPA or the issuance of a superseding BPA shall reference this BPA.

**4. EFFECTIVE PERIOD**: The effective period of this agreement ends two (2) years from the date that this agreement is entered into by the Government and contractor, unless the Contracting Officer or the Contractor withdraws sooner in writing. Any termination will require a minimum of thirty (30) days written notice to either party addressed herein.

**5. EXTENT OF OBLIGATION**: The Government is obligated only to the extent of authorized calls (made via verbal, emails, faxes) actually placed against this blanket purchase agreement and the contractor delivers with receipt and the Government accepts delivery. The Government shall not be liable in any manner in the event no calls or emails are made.

**6. PRICING**:

(a) The Contractor hereby warrants the prices offered to the Government shall be as low or lower than those charged the Contractor's most favored customers, for comparable quantities under similar terms and conditions, in addition to any discounts for prompt payment. The Contractor shall charge Fair and Reasonable prices for its supplies.

(b) The contractor shall furnish the Contracting Officer and the BPA call officer a price list for items the contractor proposes to furnish under this Agreement. The listing must be identified with the BPA number, and must be for a specific period. In some cases, a complete price list may not be possible to develop. In these specific cases, the prices shall be agreed upon prior to the BPA Call being placed. If prices are expected to change frequently, the

Contractor must provide monthly price lists to arrive in the Contracting Office and BPA Call Officer prior to the effective date of the change.

7. PURCHASE (CALL) LIMITATIONS: When placed by a Call Officer, no individual purchase (call) placed against this agreement shall exceed $2,500.00. When placed by a Contracting Officer, the individual purchase (call) shall not exceed $7,000,000.

8. NOTICE OF INDIVIDUALS AUTHORIZED TO PLACE CALLS: The Contracting Officer will furnish the contractor a list of individuals authorized to purchase under this BPA, identified by title or position, or by name of individual, organizational component, and the dollar limitation per purchase for each position title or individual by separate letter. The contractor shall not honor calls received from personnel not so listed nor will the Government accept any resultant deliveries.

9. CALLS: The contractor shall receive purchase requests (calls) verbally (telephone) or written e-mail or FAX. Contractor personnel receiving such calls verbally should assure themselves that sufficient information is obtained to prepare the delivery ticket as required by paragraph 10 of this Agreement. Calls can be made 24 hours a day. Calls made at night should be extremely urgent requirements.

10. WARRANTY COVERAGE: The Contractor shall warrant that delivered Bottle Water is from a CENTCOM approved source. Any warranty from the bottle water manufactuer shall be passed on to the Government. The Contractor shall do a one for one exchange for any bottle water that the Government determines to be containmented anytime prior to the expiration date printed on the Bottle Water Case.

11. DELIVERY SCHEDULE: The Contracting Officer shall designate the Kuwait delivery location within the BPA Call. Deliveries will be accepted 24 hours every day. The Contractor shall deliver full truck loads of Bottle Water.

**12. PACKAGING**:

Bottle Water Pallet maximum dimensions are as follows:

Max Width = 48 inches or 102 cm
Max Depth = 42 inches or 107 cm
Max height = 66 inches or 168 cm Height includes pallet, from ground to top of bottle water).
Each pallet shall have a standard number of cases on it.
**Bottle Water Pallets shall be secured with shrink-wrap to prevent damage to the product in transit, delivery, and storage.**

**13. Kuwait Locations other than Camp Doha**: Each case shall contain 12 each, 1.5 liter bottles or 20 each 0.5 liter bottles.. Pallets shall be durable. The Contractor shall standardize the number of cases on each pallet; the standard number of cases shall be placed in writing and provided to the Contracting Officer or their designated representative. Cases shall be secured to the pallet to prevent damage to the product in transit and delivery. Locations other than Camp Doha shall include but are not limited to the following locations: Camp Arifjan, NAVISTAR, Camp Buehring, Camp New York, Camp Virginia, Camp Victory, Kuwait Naval Base, APOD, SPOD, and Theater Distribution Center.

PRICE: Please provide price in KD per case for delivery of bottled water in Kuwait at locations mentioned in Block 13.

1.5 Liter Bottled Water per case (Various Locations)0 .950 fils per Carton (packing- 1 x 12 Bottles)

0.5 Liter Bottled Water per case (Various Locations) 0.900 fils per Carton (Packing- 1 x 20 Bottles)

.275 Liter Bottled Water per case ( Various Locations) 0.850 fils per Carton (Packing 1 x 20 Bottles)

FSC AND BPA CODE

BPA Master Dollar Limit: $10,000,000.00
BPA Call Limit: $7,000,000.00

Period of Performance: 24-Sep-2004 to 25-Sep-2006

FSC Codes:
8960

SPECIAL INSTRUCTION
ADDITIONAL PAYMENT INFORMATION

a. **PROMPT PAYMENT ACT**. The government is required to pay a valid invoice net 30-days. This means 30-days after the receipt of the contractor's invoice and the government's receiving report; the government

is required to pay the contractor. If the government delays payment, interest will automatically be added to the contractor's invoice.

b. **DISCOUNT FOR PROMPT PAYMENT.** If the contractor desires to be paid quicker than 30-days after the receipt of the invoice and the government's receiving report, the contractor may offer a discount on the invoice charges. For example, the contractor may offer 2% to be paid in 15-days vice 30-days. If the offered discount rate is advantageous to the government, the discount shall be accepted. If the offered discount rate is not advantageous to the government, the discount shall not be accepted and the contractor shall be paid 30-days after the receipt of the contractor's invoice and the government's receiving report. The discount to prompt payment is compared to the U.S. Treasury rate. As the U.S. Treasury rate changes, the offered discount to prompt payment may have to change as well.

## SPECIAL INSTRUCTIONS

**BUYER:** **CPT Cockerham, USACC-SWA-KUWAIT**
Phone: 965-389-2136 (COMM)/430-2136 (DSN)
Fax: 965-389-2333 (COMM)/430-2333 (DSN)
E-mail: john.cockerham@arifjan.arcent.army.mil

**Purchased For: US Army Various Locations in Kuwait and Iraq. Surface to some of the locations are unimproved which could cause delays in deliveries. Contractor shall do everything possible to ensure deliveries are made on time. The contractor is liable for all equipment and personnel necessary to deliver to the proper quantities. The US Military is not liable for damages caused to transportation assets or equipment necessary to deliver the items.**

**Personnel to contact for directions and acess to various locations are as follows:**
**MAJ Banks: 968-4819**
**CPT Sharp: 970-5952**

**The Contractor must submit 5 copies of each invoice to the Department of The Army, HHC, ARCENT-KU, ATTN: Finance Vendor Pay, APO AE 09889-9900**

**Notice to Paying Office: A copy of the DD1155 BPA Call should be attached to your payment voucher so that the payment information goes to the proper USACC-SWA Kuwait Branch.**

11. **PAYMENT:** All requests for payment, invoice, and payment status will be referred to addressee in Block #18a. All problems on payment of accounts will be directed to the same office. **Call 965-468-2051** for telephonic

inquiries. Payment will be made NET 30 days from date of receipt of invoice in paying office or acceptance of material/services, whichever is later.

CLAUSES INCORPORATED BY REFERENCE

| | | |
|---|---|---|
| 52.202-1 | Definitions | JUL 2004 |
| 52.203-3 | Gratuities | APR 1984 |
| 52.203-6 Alt I | Restrictions On Subcontractor Sales To The Government (Jul 1995) -- Alternate I | OCT 1995 |
| 52.211-17 | Delivery of Excess Quantities | SEP 1989 |
| 52.225-13 | Restrictions on Certain Foreign Purchases | DEC 2003 |
| 52.225-14 | Inconsistency Between English Version And Translation Of Contract | FEB 2000 |
| 52.232-1 | Payments | APR 1984 |
| 52.232-25 | Prompt Payment | OCT 2003 |
| 52.233-1 | Disputes | JUL 2002 |
| 52.236-7 | Permits and Responsibilities | NOV 1991 |
| 52.243-1 | Changes--Fixed Price | AUG 1987 |
| 52.246-1 | Contractor Inspection Requirements | APR 1984 |
| 52.246-4 | Inspection Of Services--Fixed Price | AUG 1996 |
| 52.246-16 | Responsibility For Supplies | APR 1984 |
| 52.247-34 | F.O.B. Destination | NOV 1991 |
| 52.249-4 | Termination For Convenience Of The Government (Services) (Short Form) | APR 1984 |
| 52.249-8 | Default (Fixed-Price Supply & Service) | APR 1984 |
| 252.201-7000 | Contracting Officer's Representative | DEC 1991 |
| 252.209-7001 | Disclosure of Ownership or Control by the Government of a Terrorist Country | MAR 1998 |
| 252.209-7002 | Disclosure Of Ownership Or Control By A Foreign Government | SEP 1994 |
| 252.209-7004 | Subcontracting With Firms That Are Owned or Controlled By The Government of a Terrorist Country | MAR 1998 |
| 252.225-7041 | Correspondence in English | JUN 1997 |
| 252.225-7042 | Authorization to Perform | APR 2003 |
| 252.232-7008 | Assignment of Claims (Overseas) | JUN 1997 |
| 252.233-7001 | Choice of Law (Overseas) | JUN 1997 |
| 252.243-7001 | Pricing Of Contract Modifications | DEC 1991 |
| 252.247-7023 | Transportation of Supplies by Sea | MAY 2002 |

CLAUSES INCORPORATED BY FULL TEXT

52.212-1 INSTRUCTIONS TO OFFERORS--COMMERCIAL ITEMS (JAN 2004)

(a) North American Industry Classification System (NAICS) code and small business size standard. The NAICS code and small business size standard for this acquisition appear in Block 10 of the solicitation cover sheet (SF 1449). However, the small business size standard for a concern which submits an offer in its own name, but which proposes to furnish an item which it did not itself manufacture, is 500 employees.

(b) Submission of offers. Submit signed and dated offers to the office specified in this solicitation at or before the exact time specified in this solicitation. Offers may be submitted on the SF 1449, letterhead stationery, or as otherwise specified in the solicitation. As a minimum, offers must show--

(1) The solicitation number;

(2) The time specified in the solicitation for receipt of offers;

(3) The name, address, and telephone number of the offeror;

(4) A technical description of the items being offered in sufficient detail to evaluate compliance with the requirements in the solicitation. This may include product literature, or other documents, if necessary;

(5) Terms of any express warranty;

(6) Price and any discount terms;

(7) "Remit to" address, if different than mailing address;

(8) A completed copy of the representations and certifications at FAR 52.212-3;

(9) Acknowledgment of Solicitation Amendments;

(10) Past performance information, when included as an evaluation factor, to include recent and relevant contracts for the same or similar items and other references (including contract numbers, points of contact with telephone numbers and other relevant information); and

(11) If the offer is not submitted on the SF 1449, include a statement specifying the extent of agreement with all terms, conditions, and provisions included in the solicitation. Offers that fail to furnish required representations or information, or reject the terms and conditions of the solicitation may be excluded from consideration.

(c) Period for acceptance of offers. The offeror agrees to hold the prices in its offer firm for 30 calendar days from the date specified for receipt of offers, unless another time period is specified in an addendum to the solicitation.

(d) Product samples. When required by the solicitation, product samples shall be submitted at or prior to the time specified for receipt of offers. Unless otherwise specified in this solicitation, these samples shall be submitted at no expense to the Government, and returned at the sender's request and expense, unless they are destroyed during preaward testing.

(e) Multiple offers. Offerors are encouraged to submit multiple offers presenting alternative terms and conditions or commercial items for satisfying the requirements of this solicitation. Each offer submitted will be evaluated separately.

(f) Late submissions, modifications, revisions, and withdrawals of offers:

(1) Offerors are responsible for submitting offers, and any modifications, revisions, or withdrawals, so as to reach the Government office designated in the solicitation by the time specified in the solicitation. If no time is specified in the solicitation, the time for receipt is 4:30 p.m., local time, for the designated Government office on the date that offers or revisions are due.

(2)(i) Any offer, modification, revision, or withdrawal of an offer received at the Government office designated in the solicitation after the exact time specified for receipt of offers is "late" and will not be considered unless it is

received before award is made, the Contracting Officer determines that accepting the late offer would not unduly delay the acquisition; and--

(A) If it was transmitted through an electronic commerce method authorized by the solicitation, it was received at the initial point of entry to the Government infrastructure not later than 5:00 p.m. one working day prior to the date specified for receipt of offers; or

(B) There is acceptable evidence to establish that it was received at the Government installation designated for receipt of offers and was under the Government's control prior to the time set for receipt of offers; or

(C) If this solicitation is a request for proposals, it was the only proposal received.

(ii) However, a late modification of an otherwise successful offer, that makes its terms more favorable to the Government, will be considered at any time it is received and may be accepted.

(3) Acceptable evidence to establish the time of receipt at the Government installation includes the time/date stamp of that installation on the offer wrapper, other documentary evidence of receipt maintained by the installation, or oral testimony or statements of Government personnel.

(4) If an emergency or unanticipated event interrupts normal Government processes so that offers cannot be received at the Government office designated for receipt of offers by the exact time specified in the solicitation, and urgent Government requirements preclude amendment of the solicitation or other notice of an extension of the closing date, the time specified for receipt of offers will be deemed to be extended to the same time of day specified in the solicitation on the first work day on which normal Government processes resume.

(5) Offers may be withdrawn by written notice received at any time before the exact time set for receipt of offers. Oral offers in response to oral solicitations may be withdrawn orally. If the solicitation authorizes facsimile offers, offers may be withdrawn via facsimile received at any time before the exact time set for receipt of offers, subject to the conditions specified in the soliciation concerning facsimile offers. An offer may be withdrawn in person by an offeror or its authorized representative if, before the exact time set for receipt of offers, the identity of the person requesting withdrawal is established and the person signs a receipt for the offer.

(g) Contract award (not applicable to Invitation for Bids). The Government intends to evaluate offers and award a contract without discussions with offerors. Therefore, the offeror's initial offer should contain the offeror's best terms from a price and technical standpoint. However, the Government reserves the right to conduct discussions if later determined by the Contracting Officer to be necessary. The Government may reject any or all offers if such action is in the public interest; accept other than the lowest offer; and waive informalities and minor irregularities in offers received.

(h) Multiple awards. The Government may accept any item or group of items of an offer, unless the offeror qualifies the offer by specific limitations. Unless otherwise provided in the Schedule, offers may not be submitted for quantities less than those specified. The Government reserves the right to make an award on any item for a quantity less than the quantity offered, at the unit prices offered, unless the offeror specifies otherwise in the offer.

(i) Availability of requirements documents cited in the solicitation. (1) The Index of Federal Specifications, Standards and Commercial Item Descriptions and the documents listed in it may be obtained from the General Services Administration, Federal Supply Service Bureau, Specifications Section, Suite 8100, 470 L'Enfant Plaza, SW, Washington, DC 20407 ((202) 619-8925).

(2) The DOD Index of Specifications and Standards (DODISS) and documents listed in it may be obtained from the Standardization Documents Desk, Building 4D, 700 Robbins Avenue, Philadelphia, PA 19111-5094 (telephone (215) 697-2569).

(i) Availability of requirements documents cited in the solicitation. (1)(i) The GSA Index of Federal Specifications, Standards and Commercial Item Descriptions, FPMR Part 101-29, and copies of specifications, standards, and commercial item descriptions cited in this solicitation may be obtained for a fee by submitting a request to--GSA Federal Supply Service Specifications Section, Suite 8100, 470 East L'Enfant Plaza, SW, Washington, DC 20407, Telephone (202) 619-8925, Facsimile (202) 619-8978.

(ii) If the General Services Administration, Department of Agriculture, or Department of Veterans Affairs issued this solicitation, a single copy of specifications, standards, and commercial item descriptions cited in this solicitation may be obtained free of charge by submitting a request to the addressee in paragraph (i)(1)(i) of this provision. Additional copies will be issued for a fee.

(2) The DoD Index of Specifications and Standards (DoDISS) and documents listed in it may be obtained from the--Department of Defense Single Stock Point (DoDSSP), Building 4, Section D, 700 Robbins Avenue, Philadelphia, PA 19111-5094, Telephone (215) 697-2667/2179, Facsimile (215) 697-1462.

(i) Automatic distribution may be obtained on a subscription basis

(ii) Order forms, pricing information, and customer support information may be obtained--

(A) By telephone at (215) 697-2667/2179; or

(B) Through the DoDSSP Internet site at http://dodssp.daps.mil.

(3) Nongovernment (voluntary) standards must be obtained from the organization responsible for their preparation, publication, or maintenance.

(j) Data Universal Numbering System (DUNS) Number. (Applies to all offers exceeding $25,000, and offers of $25,000 or less if the solicitation requires the Contractor to be registered in the Central Contractor Registration (CCR) database. The offeror shall enter, in the block with its name and address on the cover page of its offer, the annotation "DUNS" or "DUNS +4" followed by the DUNS or DUNS +4 number that identifies the offeror's name and address. The DUNS +4 is the DUNS number plus a 4-character suffix that may be assigned at the discretion of the offeror to establish additional CCR records for identifying alternative Electronic Funds Transfer (EFT) accounts (see FAR Subpart 32.11) for the same parent concern. If the offeror does not have a DUNS number, it should contact Dun and Bradstreet directly to obtain one. An offeror within the United States may contact Dun and Bradstreet by calling 1-866-705-5711 or via the internet at http://www.dnb.com. An offeror located outside the United States must contact the local Dun and Bradstreet office for a DUNS number.

(k) Central Contractor Registration. Unless exempted by an addendum to this solicitation, by submission of an offer, the offeror acknowledges the requirement that a prospective awardee shall be registered in the CCR database prior to award, during performance and through final payment of any contract resulting from this solicitation. If the Offeror does not become registered in the CCR database in the time prescribed by the Contracting Officer, the Contracting Officer will proceed to award to the next otherwise successful registered Offeror. Offerors may obtain information on registration and annual confirmation requirements via the Internet at http://www.ccr.gov or by calling 1-888-227-2423 or 269-961-5757.

(l) Debriefing. If a post-award debriefing is given to requesting offerors, the Government shall disclose the following information, if applicable:

(1) The agency's evaluation of the significant weak or deficient factors in the debriefed offeror's offer.

(2) The overall evaluated cost or price and technical rating of the successful and the debriefed offeror and past performance information on the debriefed offeror.

(3) The overall ranking of all offerors, when any ranking was developed by the agency during source selection.

(4) A summary of the rationale for award;

(5) For acquisitions of commercial items, the make and model of the item to be delivered by the successful offeror

(6) Reasonable responses to relevant questions posed by the debriefed offeror as to whether source-selection procedures set forth in the solicitation, applicable regulations, and other applicable authorities were followed by the agency.

(End of provision)

52.212-3 OFFEROR REPRESENTATIONS AND CERTIFICATIONS--COMMERCIAL ITEMS (JUL 2002)

(a) Definitions. As used in this provision:

"Emerging small business" means a small business concern whose size is no greater than 50 percent of the numerical size standard for the NAICS code designated.

Service-disabled veteran-owned small business concern--

(1) Means a small business concern--

(i) Not less than 51 percent of which is owned by one or more service-disabled veterans or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more service-disabled veterans; and

(ii) The management and daily business operations of which are controlled by one or more service-disabled veterans or, in the case of a veteran with permanent and severe disability, the spouse or permanent caregiver of such veteran.

(2) Service-disabled veteran means a veteran, as defined in 38 U.S.C. 101(2), with a disability that is service-connected, as defined in 38 U.S.C. 101(16).

"Small business concern" means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria in 13 CFR Part 121 and size standards in this solicitation.

Veteran-owned small business concern means a small business concern--

(1) Not less than 51 percent of which is owned by one or more veterans (as defined at 38 U.S.C. 101(2)) or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more veterans; and

(2) The management and daily business operations of which are controlled by one or more veterans.

"Women-owned small business concern" means a small business concern--

(1) That is at least 51 percent owned by one or more women or, in the case of any publicly owned business, at least 51 percent of its stock is owned by one or more women; or

(2) Whose management and daily business operations are controlled by one or more women.

"Women-owned business concern" means a concern which is at least 51 percent owned by one or more women; or in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more women; and whose management and daily business operations are controlled by one or more women.

(b) Taxpayer Identification Number (TIN) (26 U.S.C. 6109, 31 U.S.C. 7701). (Not applicable if the offeror is required to provide this information to a central contractor registration database to be eligible for award.)

(1) All offerors must submit the information required in paragraphs (b)(3) through (b)(5) of this provision to comply with debt collection requirements of 31 U.S.C. 7701(c) and 3325(d), reporting requirements of 26 U.S.C. 6041, 6041A, and 6050M, and implementing regulations issued by the Internal Revenue Service (IRS).

(2) The TIN may be used by the Government to collect and report on any delinquent amounts arising out of the offeror's relationship with the Government (31 U.S.C. 7701(c)(3)). If the resulting contract is subject to the payment reporting requirements described in FAR 4.904, the TIN provided hereunder may be matched with IRS records to verify the accuracy of the offeror's TIN.

(3) Taxpayer Identification Number (TIN).

____ TIN:--------------------------------------------------------

____ TIN has been applied for.

____ TIN is not required because:

____ Offeror is a nonresident alien, foreign corporation, or foreign partnership that does not have income effectively connected with the conduct of a trade or business in the United States and does not have an office or place of business or a fiscal paying agent in the United States;

Offeror is an agency or instrumentality of a foreign government;

____ Offeror is an agency or instrumentality of the Federal Government.

(4) Type of organization.

____ Sole proprietorship;

____ Partnership;

____ Corporate entity (not tax-exempt);

____ Corporate entity (tax-exempt);

____ Government entity (Federal, State, or local);

____ Foreign government;

____ International organization per 26 CFR 1.6049-4;

____ Other--------------------------------------------------------

(5) Common parent.

____ Offeror is not owned or controlled by a common parent;

___ Name and TIN of common parent:

Name-----------------------------------------------------------------------

TIN-----------------------------------------------------------------------

(c) Offerors must complete the following representations when the resulting contract is to be performed inside the United States, its territories or possessions, Puerto Rico, the Trust Territory of the Pacific Islands, or the District of Columbia. Check all that apply.

(1) Small business concern. The offeror represents as part of its offer that it ( ) is, ( ) is not a small business concern.

(2) Veteran-owned small business concern. (Complete only if the offeror represented itself as a small business concern in paragraph (c)(1) of this provision.) The offeror represents as part of its offer that it ( ) is, ( ) is not a veteran-owned small business concern.

(3) Service-disabled veteran-owned small business concern. (Complete only if the offeror represented itself as a veteran-owned small business concern in paragraph (c)(2) of this provision.) The offeror represents as part of its offer that it ( ) is, ( ) is not a service-disabled veteran-owned small business concern.

(4) Small disadvantaged business concern. (Complete only if the offeror represented itself as a small business concern in paragraph (c)(1) of this provision.) The offeror represents, for general statistical purposes, that it ( ) is, ( ) is not a small disadvantaged business concern as defined in 13 CFR 124.1002.

(5) Women-owned small business concern. (Complete only if the offeror represented itself as a small business concern in paragraph (c)(1) of this provision.) The offeror represents that it ( ) is, ( ) is not a women-owned small business concern.

Note: Complete paragraphs (c)(6) and (c)(7) only if this solicitation is expected to exceed the simplified acquisition threshold.

(6) Women-owned business concern (other than small business concern). (Complete only if the offeror is a women-owned business concern and did not represent itself as a small business concern in paragraph (c)(1) of this provision.) The offeror represents that it ( ) is, a women-owned business concern.

(7) Tie bid priority for labor surplus area concerns. If this is an invitation for bid, small business offerors may identify the labor surplus areas in which costs to be incurred on account of manufacturing or production (by offeror or first-tier subcontractors) amount to more than 50 percent of the contract price:

______________________________________________________________

(8) Small Business Size for the Small Business Competitiveness Demonstration Program and for the Targeted Industry Categories under the Small Business Competitiveness Demonstration Program. (Complete only if the offeror has represented itself to be a small business concern under the size standards for this solicitation.)

(i) (Complete only for solicitations indicated in an addendum as being set-aside for emerging small businesses in one of the four designated industry groups (DIGs).) The offeror represents as part of its offer that it ( ) is, ( ) is not an emerging small business.

(ii) (Complete only for solicitations indicated in an addendum as being for one of the targeted industry categories (TICs) or four designated industry groups (DIGs).) Offeror represents as follows:

(A) Offeror's number of employees for the past 12 months (check the Employees column if size standard stated in the solicitation is expressed in terms of number of employees); or

(B) Offeror's average annual gross revenue for the last 3 fiscal years (check the Average Annual Gross Number of Revenues column if size standard stated in the solicitation is expressed in terms of annual receipts).

(Check one of the following):

Average Annual

Number of Employees Gross Revenues

___ 50 or fewer ___ $1 million or less

___ 51 - 100 ___ $1,000,001 - $2 million

___ 101 - 250 ___ $2,000,001 - $3.5 million

___ 251 - 500 ___ $3,500,001 - $5 million

___ 501 - 750 ___ $5,000,001 - $10 million

___ 751 - 1,000 ___ $10,000,001 - $17 million

___ Over 1,000 ___ Over $17 million

(9) (Complete only if the solicitation contains the clause at FAR 52.219-23, Notice of Price Evaluation Adjustment for Small Disadvantaged Business Concerns or FAR 52.219-25, Small Disadvantaged Business Participation Program-Disadvantaged Status and Reporting, and the offeror desires a benefit based on its disadvantaged status.)

(i) General. The offeror represents that either--

(A) It ( ) is, ( ) is not certified by the Small Business Administration as a small disadvantaged business concern and identified, on the date of this representation, as a certified small disadvantaged business concern in the database maintained by the Small Business Administration (PRO-Net), and that no material change in disadvantaged ownership and control has occurred since its certification, and, where the concern is owned by one or more individuals claiming disadvantaged status, the net worth of each individual upon whom the certification is based does not exceed $750,000 after taking into account the applicable exclusions set forth at 13 CFR 124.104(c)(2); or

(B) It ( ) has, ( ) has not submitted a completed application to the Small Business Administration or a Private Certifier to be certified as a small disadvantaged business concern in accordance with 13 CFR 124, Subpart B, and a decision on that application is pending, and that no material change in disadvantaged ownership and control has occurred since its application was submitted.

(ii) Joint Ventures under the Price Evaluation Adjustment for Small Disadvantaged Business Concerns. The offeror represents, as part of its offer, that it is a joint venture that complies with the requirements in 13 CFR 124.1002(f) and that the representation in paragraph (c)(7)(i) of this provision is accurate for the small disadvantaged business concern that is participating in the joint venture. (The offeror shall enter the name of the small disadvantaged business concern that is participating in the joint venture: ______________.)

(10) HUBZone small business concern. (Complete only if the offeror represented itself as a small business concern in paragraph (c)(1) of this provision.) The offeror represents, as part of its offer, that--

(i) It ( ) is, ( ) is not a HUBZone small business concern listed, on the date of this representation, on the List of Qualified HUBZone Small Business Concerns maintained by the Small Business Administration, and no material change in ownership and control, principal office, or HUBZone employee percentage has occurred since it was certified by the Small Business Administration in accordance with 13 CFR part 126; and

(ii) It ( ) is, ( ) is not s joint venture that complies with the requirements of 13 CFR part 126, and the representation in paragraph (c)(10)(i) of this provision is accurate for the HUBZone small business concern or concerns that are participating in the joint venture. (The offeror shall enter the name or names of the HUBZone small business concern or concerns that are participating in the joint venture: __________________.) Each HUBZone small business concern participating in the joint venture shall submit a separate signed copy of the HUBZone representation.

(d) Certifications and representations required to implement provisions of Executive Order 11246--

(1) Previous Contracts and Compliance. The offeror represents that--

(i) It ( ) has, ( ) has not, participated in a previous contract or subcontract subject either to the Equal Opportunity clause of this solicitation, the and

(ii) It ( ) has, ( ) has not, filed all required compliance reports.

(2) Affirmative Action Compliance. The offeror represents that--

(i) It ( ) has developed and has on file, ( ) has not developed and does not have on file, at each establishment, affirmative action programs required by rules and regulations of the Secretary of Labor (41 CFR Subparts 60-1 and 60-2), or

(ii) It ( ) has not previously had contracts subject to the written affirmative action programs requirement of the rules and regulations of the Secretary of Labor.

(e) Certification Regarding Payments to Influence Federal Transactions (31 U.S.C. 1352). (Applies only if the contract is expected to exceed $100,000.) By submission of its offer, the offeror certifies to the best of its knowledge and belief that no Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress or an employee of a Member of Congress on his or her behalf in connection with the award of any resultant contract.

(f) Buy American Act Certificate. (Applies only if the clause at Federal Acquisition Regulation (FAR) 52.225-1, Buy American Act --Supplies, is included in this solicitation.)

(1) The offeror certifies that each end product, except those listed in paragraph (f)(2) of this provision, is a domestic end product as defined in the clause of this solicitation entitled ``Buy American Act --Supplies" and that the offeror has considered components of unknown origin to have been mined, produced, or manufactured outside the United States. The offeror shall list as foreign end products those end products manufactured in the United States that do not qualify as domestic end products.

(2) Foreign End Products:

Line Item No.:----------------------------------------------------------------
Country of Origin:-------------------------------------------------------------

(List as necessary)

(3) The Government will evaluate offers in accordance with the policies and procedures of FAR Part 25.

(g)(1) Buy American Act--North American Free Trade Agreement--Israeli Trade Act Certificate. (Applies only if the clause at FAR 52.225-3, Buy American Act--North American Free Trade Agreement--Israeli Trade Act, is included in this solicitation.)

(i) The offeror certifies that each end product, except those listed in paragraph (g)(1)(ii) or (g)(1)(iii) of this provision, is a domestic end product as defined in the clause of this solicitation entitled ``Buy American Act--North American Free Trade Agreement--Israeli Trade Act'' and that the offeror has considered components of unknown origin to have been mined, produced, or manufactured outside the United States.

(ii) The offeror certifies that the following supplies are NAFTA country end products or Israeli end products as defined in the clause of this solicitation entitled ``Buy American Act--North American Free Trade Agreement--Israeli Trade Act'':

NAFTA Country or Israeli End Products

Line Item No.:------------------------------------------------------------
Country of Origin:-------------------------------------------------------

(List as necessary)

(iii) The offeror shall list those supplies that are foreign end products (other than those listed in paragraph (g)(1)(ii) of this provision) as defined in the clause of this solicitation entitled ``Buy American Act--North American Free Trade Agreement--Israeli Trade Act.'' The offeror shall list as other foreign end products those end products manufactured in the United States that do not qualify as domestic end products.

Other Foreign End Products

Line Item No.:------------------------------------------------------------
Country of Origin:-------------------------------------------------------

(List as necessary)

(iv) The Government will evaluate offers in accordance with the policies and procedures of FAR Part 25.

(2) Buy American Act--North American Free Trade Agreements--Israeli Trade Act Certificate, Alternate I (May 2002). If Alternate I to the clause at FAR 52.225-3 is included in this solicitation, substitute the following paragraph (g)(1)(ii) for paragraph (g)(1)(ii) of the basic provision:

(g)(1)(ii) The offeror certifies that the following supplies are Canadian end products as defined in the clause of this solicitation entitled "Buy American Act--North American Free Trade Agreement--Israeli Trade Act":

Canadian End Products:

Line Item No.

------------------------------------------------------------------------
------------------------------------------------------------------------
------------------------------------------------------------------------

(List as necessary)

(3) Buy American Act--North American Free Trade Agreements--Israeli Trade Act Certificate, Alternate II (May 2002). If Alternate II to the clause at FAR 52.225-3 is included in this solicitation, substitute the following paragraph (g)(1)(ii) for paragraph (g)(1)(ii) of the basic provision:

(g)(1)(ii) The offeror certifies that the following supplies are Canadian end products or Israeli end products as defined in the clause of this solicitation entitled "Buy American Act--North American Free Trade Agreement--Israeli Trade Act":

Canadian or Israeli End Products:

Line Item No.

---------------------------------------------------------------

---------------------------------------------------------------

---------------------------------------------------------------

Country of Origin

---------------------------------------------------------------

---------------------------------------------------------------

---------------------------------------------------------------

(List as necessary)

(4) Trade Agreements Certificate. (Applies only if the clause at FAR 52.225-5, Trade Agreements, is included in this solicitation.)

(i) The offeror certifies that each end product, except those listed in paragraph (g)(4)(ii) of this provision, is a U.S.-made, designated country, Caribbean Basin country, or NAFTA country end product, as defined in the clause of this solicitation entitled ``Trade Agreements.''

(ii) The offeror shall list as other end products those end products that are not U.S.-made, designated country, Caribbean Basin country, or NAFTA country end products.

Other End Products

Line Item No.:---------------------------------------------------------

Country of Origin:-----------------------------------------------------

(List as necessary)

(iii) The Government will evaluate offers in accordance with the policies and procedures of FAR Part 25. For line items subject to the Trade Agreements Act, the Government will evaluate offers of U.S.-made, designated country, Caribbean Basin country, or NAFTA country end products without regard to the restrictions of the Buy American Act. The Government will consider for award only offers of U.S.-made, designated country, Caribbean Basin country, or NAFTA country end products unless the Contracting Officer determines that there are no offers for such products or that the offers for such products are insufficient to fulfill the requirements of the solicitation.

(h) Certification Regarding Debarment, Suspension or Ineligibility for Award (Executive Order 12549). The offeror certifies, to the best of its knowledge and belief, that --

(1) The offeror and/or any of its principals ( ) are, ( ) are not presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any Federal agency, and

(2) ( ) Have, ( ) have not, within a three-year period preceding this offer, been convicted of or had a civil judgment rendered against them for: commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a Federal, state or local government contract or subcontract; violation of Federal or state antitrust statutes relating to the submission of offers; or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, or receiving stolen property; and ( ) are,

( ) are not presently indicted for, or otherwise criminally or civilly charged by a Government entity with, commission of any of these offenses.

(i) Certification Regarding Debarment, Suspension or Ineligibility for Award (Executive Order 12549). The offeror certifies, to the best of its knowledge and belief, that--

(1) The offeror and/or any of its principals ( ) are, ( ) are not presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any Federal agency; and

(2) ( ) Have, ( ) have not, within a three-year period preceding this offer, been convicted of or had a civil judgment rendered against them for: commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a Federal, state or local government contract or subcontract; violation of Federal or state antitrust statutes relating to the submission of offers; or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, or receiving stolen property; and ( ) are, ( ) are not presently indicted for, or otherwise criminally or civilly charged by a Government entity with, commission of any of these offenses.

(j) Certification Regarding Knowledge of Child Labor for Listed End Products (Executive Order 13126). [The Contracting Officer must list in paragraph (j)(1) any end products being acquired under this solicitation that are included in the List of Products Requiring Contractor Certification as to Forced or Indentured Child Labor, unless excluded at 22.1503(b).]

(1) Listed End Product

| Listed End Product | Listed Countries of Origin: |
|---|---|
| | |
| | |
| | |

(2) Certification. [If the Contracting Officer has identified end products and countries of origin in paragraph (j)(1) of this provision, then the offeror must certify to either (j)(2)(i) or (j)(2)(ii) by checking the appropriate block.]

( )(i) The offeror will not supply any end product listed in paragraph (j)(1) of this provision that was mined, produced, or manufactured in the corresponding country as listed for that product.

( ) (ii) The offeror may supply an end product listed in paragraph (j)(1) of this provision that was mined, produced, or manufactured in the corresponding country as listed for that product. The offeror certifies that is has made a good faith effort to determine whether forced or indentured child labor was used to mine, produce, or manufacture any such end product furnished under this contract. On the basis of those efforts, the offeror certifies that it is not aware of any such use of child labor.

(End of provision)

52.212-4 CONTRACT TERMS AND CONDITIONS-- COMMERCIAL ITEMS (OCT 2003)

(a) Inspection/Acceptance. The Contractor shall only tender for acceptance those items that conform to the requirements of this contract. The Government reserves the right to inspect or test any supplies or services that have been tendered for acceptance. The Government may require repair or replacement of nonconforming supplies or reperformance of nonconforming services at no increase in contract price. The Government must exercise its post-acceptance rights (1) within a reasonable time after the defect was discovered or should have been discovered; and

(2) before any substantial change occurs in the condition of the item, unless the change is due to the defect in the item.

(b) Assignment. The Contractor or its assignee may assign its rights to receive payment due as a result of performance of this contract to a bank, trust company, or other financing institution, including any Federal lending agency in accordance with the Assignment of Claims Act (31 U.S.C. 3727). However, when a third party makes payment (e.g., use of the Governmentwide commercial purchase card), the Contractor may not assign its rights to receive payment under this contract.

(c) Changes. Changes in the terms and conditions of this contract may be made only by written agreement of the parties.

(d) Disputes. This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613). Failure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appeal or action arising under or relating to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes, which is incorporated herein by reference. The Contractor shall proceed diligently with performance of this contract, pending final resolution of any dispute arising under the contract.

(e) Definitions. The clause at FAR 52.202-1, Definitions, is incorporated herein by reference.

(f) Excusable delays. The Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence such as, acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common carriers. The Contractor shall notify the Contracting Officer in writing as soon as it is reasonably possible after the commencement or any excusable delay, setting for the full particulars in connection therewith, shall remedy such occurrence with all reasonable dispatch and shall promptly give written notice to the Contracting Officer of the cessation of such occurrence.

(g) Invoice. (1) The Contractor shall submit an original invoice and three copies (or electronic invoice, if authorized) to the address designated in the contract to receive invoices. An invoice must include--

(i) Name and address of the Contractor;

(ii) Invoice date and number;

(iii) Contract number, contract line item number and, if applicable, the order number;

(iv) Description, quantity, unit of measure, unit price and extended price of the items delivered;

(v) Shipping number and date of shipment, including the bill of lading number and weight of shipment if shipped on Government bill of lading;

(vi) Terms of any discount for prompt payment offered;

(vii) Name and address of official to whom payment is to be sent;

(viii) Name, title, and phone number of person to notify in event of defective invoice; and

(ix) Taxpayer Identification Number (TIN). The Contractor shall include its TIN on the invoice only if required elsewhere in this contract.

(x) Electronic funds transfer (EFT) banking information.

(A) The Contractor shall include EFT banking information on the invoice only if required elsewhere in this contract.

(B) If EFT banking information is not required to be on the invoice, in order for the invoice to be a proper invoice, the Contractor shall have submitted correct EFT banking information in accordance with the applicable solicitation provision, contract clause (e.g., 52.232-33, Payment by Electronic Funds Transfer--Central Contractor Registration, or 52.232-34, Payment by Electronic
Funds Transfer--Other Than Central Contractor Registration), or applicable agency procedures.

(C) EFT banking information is not required if the Government waived the requirement to pay by EFT.

(2) Invoices will be handled in accordance with the Prompt Payment Act (31 U.S.C. 3903) and Office of Management and Budget (OMB) prompt payment regulations at 5 CFR part 1315.

(h) Patent indemnity. The Contractor shall indemnify the Government and its officers, employees and agents against liability, including costs, for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark or copyright, arising out of the performance of this contract, provided the Contractor is reasonably notified of such claims and proceedings.

(i) Payment.--

(1) Items accepted. Payment shall be made for items accepted by the Government that have been delivered to the delivery destinations set forth in this contract.

(2) Prompt payment. The Government will make payment in accordance with the Prompt Payment Act (31 U.S.C. 3903) and prompt payment regulations at 5 CFR part 1315.

(3) Electronic Funds Transfer (EFT). If the Government makes payment by EFT, see 52.212-5(b) for the appropriate EFT clause.

(4) Discount. In connection with any discount offered for early payment, time shall be computed from the date of the invoice. For the purpose of computing the discount earned, payment shall be considered to have been made on the date which appears on the payment check or the specified payment date if an electronic funds transfer payment is made.

(5) Overpayments. If the Contractor becomes aware of a duplicate contract financing or invoice payment or that the Government has otherwise overpaid on a contract financing or invoice payment, the Contractor shall immediately notify the Contracting Officer and request instructions for disposition of the overpayment.

(j) Risk of loss. Unless the contract specifically provides otherwise, risk of loss or damage to the supplies provided under this contract shall remain with the Contractor until, and shall pass to the Government upon:

(1) Delivery of the supplies to a carrier, if transportation is f.o.b. origin; or

(2) Delivery of the supplies to the Government at the destination specified in the contract, if transportation is f.o.b. destination.

(k) Taxes. The contract price includes all applicable Federal, State, and local taxes and duties.

(l) Termination for the Government's convenience. The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination. The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this

purpose. This paragraph does not give the Government any right to audit the Contractor's records. The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided.

(m) Termination for cause. The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law. If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.

(n) Title. Unless specified elsewhere in this contract, title to items furnished under this contract shall pass to the Government upon acceptance, regardless of when or where the Government takes physical possession.

(o) Warranty. The Contractor warrants and implies that the items delivered hereunder are merchantable and fit for use for the particular purpose described in this contract.

(p) Limitation of liability. Except as otherwise provided by an express warranty, the Contractor will not be liable to the Government for consequential damages resulting from any defect or deficiencies in accepted items.

(q) Other compliances. The Contractor shall comply with all applicable Federal, State and local laws, executive orders, rules and regulations applicable to its performance under this contract.

(r) Compliance with laws unique to Government contracts. The Contractor agrees to comply with 31 U.S.C. 1352 relating to limitations on the use of appropriated funds to influence certain Federal contracts; 18 U.S.C. 431 relating to officials not to benefit; 40 U.S.C. 327, et seq., Contract Work Hours and Safety Standards Act; 41 U.S.C. 51-58, Anti-Kickback Act of 1986; 41 U.S.C. 265 and 10 U.S.C. 2409 relating to whistleblower protections; 49 U.S.C. 40118, Fly American; and 41 U.S.C. 423 relating to procurement integrity.

(s) Order of precedence. Any inconsistencies in this solicitation or contract shall be resolved by giving precedence in the following order: (1) the schedule of supplies/services; (2) the Assignments, Disputes, Payments, Invoice, Other Compliances, and Compliance with Laws Unique to Government Contracts paragraphs of this clause; (3) the clause at 52.212-5; (4) addenda to this solicitation or contract, including any license agreements for computer software; (5) solicitation provisions if this is a solicitation; (6) other paragraphs of this clause; (7) the Standard Form 1449; (8) other documents, exhibits, and attachments; and (9) the specification.

(t) Central Contractor Registration (CCR). (1) Unless exempted by an addendum to this contract, the Contractor is responsible during performance and through final payment of any contract for the accuracy and completeness of the data within the CCR database, and for any liability resulting from the Government's reliance on inaccurate or incomplete data. To remain registered in the CCR database after the initial registration, the Contractor is required to review and update on an annual basis from the date of initial registration or subsequent updates its information in the CCR database to ensure it is current, accurate and complete. Updating information in the CCR does not alter the terms and conditions of this contract and is not a substitute for a properly executed contractual document.

(2)(i) If a Contractor has legally changed its business name, "doing business as" name, or division name (whichever is shown on the contract), or has transferred the assets used in performing the contract, but has not completed the necessary requirements regarding novation and change-of-name agreements in FAR subpart 42.12, the Contractor shall provide the responsible Contracting Officer a minimum of one business day's written notification of its intention to (A) change the name in the CCR database; (B) comply with the requirements of subpart 42.12; and (C) agree in writing to the timeline and procedures specified by the responsible Contracting Officer. The Contractor must provide with the notification sufficient documentation to support the legally changed name.

(ii) If the Contractor fails to comply with the requirements of paragraph (t)(2)(i) of this clause, or fails to perform the agreement at paragraph (t)(2)(i)(C) of this clause, and, in the absence of a properly executed novation or change-of-name agreement, the CCR information that shows the Contractor to be other than the Contractor indicated in the contract will be considered to be incorrect information within the meaning of the "Suspension of Payment" paragraph of the electronic funds transfer (EFT) clause of this contract.

(3) The Contractor shall not change the name or address for EFT payments or manual payments, as appropriate, in the CCR record to reflect an assignee for the purpose of assignment of claims (see Subpart 32.8, Assignment of Claims). Assignees shall be separately registered in the CCR database. Information provided to the Contractor's CCR record that indicates payments, including those made by EFT, to an ultimate recipient other than that Contractor will be considered to be incorrect information within the meaning of the "Suspension of payment" paragraph of the EFT clause of this contract.

(4) Offerors and Contractors may obtain information on registration and annual confirmation requirements via the internet at http://www.ccr.gov or by calling 1-888-227-2423 or 269-961-5757.

(End of clause)

52.212-5 CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS--COMMERCIAL ITEMS (JUN 2004)

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clause, which is incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items: 52.233-3, Protest after Award (AUG 1996) (31 U.S.C. 3553).

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items: (Contracting Officer check as appropriate.)

___ (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (JUL 1995), with Alternate I (OCT 1995) (41 U.S.C. 253g and 10 U.S.C. 2402).

___ (2) 52.219-3, Notice of HUBZone Small Business Set-Aside (Jan 1999) (U.S.C. 657a).

___ (3) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (Jan 1999) (if the offeror elects to waive the preference, it shall so indicate in its offer) (U.S.C. 657a).

___(4) (i) 52.219-5, Very Small Business Set-Aside (JUNE 2003) (Pub. L. 103-403, section 304, Small Business Reauthorization and Amendments Act of 1994).

___(ii) Alternate I (MAR 1999) to 52.219-5.

___(iii) Alternate II to (JUNE 2003) 52.219-5.

___ (5)(i) 52.219-6, Notice of Total Small Business Set-Aside (JUNE 2003) (15 U.S.C. 644).

___ (ii) Alternate I (OCT 1995) of 52.219-6.

___ (iii) Alternate II (MAR 2004) of 52.219-6.

____ (6)(i) 52.219-7, Notice of Partial Small Business Set-Aside (JUNE 2003) (15 U.S.C. 644).

____ (ii) Alternate I (OCT 1995) of 52.219-7.

____ (iii) Alternate II (MAR 2004) of 52.219-7.

____ (7) 52.219-8, Utilization of Small Business Concerns (MAY 2004) (15 U.S.C. 637 (d)(2) and (3)).

____ (8)(i) 52.219-9, Small Business Subcontracting Plan (JAN 2002) (15 U.S.C. 637(d)(4)).

____ (ii) Alternate I (OCT 2001) of 52.219-9

____ (iii) Alternate II (OCT 2001) of 52.219-9.

____ (9) 52.219-14, Limitations on Subcontracting (DEC 1996) (15 U.S.C. 637(a)(14)).

____ (10)(i) 52.219-23, Notice of Price Evaluation Adjustment for Small Disadvantaged Business Concerns (JUNE 2003) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323) (if the offeror elects to waive the adjustment, it shall so indicate in its offer).

____ (ii) Alternate I (JUNE 2003) of 52.219-23.

____ (11) 52.219-25, Small Disadvantaged Business Participation Program--Disadvantaged Status and Reporting (OCT 1999) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

____ (12) 52.219-26, Small Disadvantaged Business Participation Program--Incentive Subcontracting (OCT 2000) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

____ (13) 52.219-27, Notice of Total Service-Disabled Veteran-Owned Small Business Set-Aside (May 2004).

____ (14) 52.222-3, Convict Labor (JUNE 2003) (E.O. 11755).

____ (15) 52.222-19, Child Labor--Cooperation with Authorities and Remedies (Jun 2004) (E.O. 13126).

____ (16) 52.222-21, Prohibition of Segregated Facilities (FEB 1999).

____ (17) 52.222-26, Equal Opportunity (APR 2002) (E.O. 11246).

____ (18) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (DEC 2001) (38 U.S.C. 4212).

____ (19) 52.222-36, Affirmative Action for Workers with Disabilities (JUN 1998) (29 U.S.C. 793).

____ (20) 52.222-37, Employment Reports on Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (DEC 2001) (38 U.S.C. 4212).

____ (21)(i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA-Designated Products (AUG 2000) (42 U.S.C. 6962(c)(3)(A)(ii)).

____ (ii) Alternate I (AUG 2000) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)).

____ (22) 52.225-1, Buy American Act--Supplies (JUNE 2003) (41 U.S.C. 10a-10d).

___ (23)(i) 52.225-3, Buy American Act--Free Trade Agreements--Israeli Trade Act (JAN 2004) (41 U.S.C. 10a-10d, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, Pub. L. 108-77, 108-78).

___ (ii) Alternate I (JAN 2004) of 52.225-3.

___ (iii) Alternate II (JAN 2004) of 52.225-3.

___ (24) 52.225-5, Trade Agreements (Jun 2004) (19 U.S.C. 2501, et seq., 19 U.S.C. 3301 note).

_X__ (25) 52.225-13, Restrictions on Certain Foreign Purchases (OCT 2003) (E.o.s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of Treasury).

___ (26) 52.225-15, Sanctioned European Union Country End Products (FEB 2000) (E.O. 12849).

___ (27) 52.225-16, Sanctioned European Union Country Services (FEB 2000) (E.O. 12849).

___ (28) 52.232-29, Terms for Financing of Purchases of Commercial Items (FEB 2002) (41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

___ (29) 52.232-30, Installment Payments for Commercial Items (OCT 1995) (41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

___ (30) 52.232-33, Payment by Electronic Funds Transfer--Central Contractor Registration (OCT 2003) (31 U.S.C. 3332).

___ (31) 52.232-34, Payment by Electronic Funds Transfer--Other than Central Contractor Registration (MAY 1999) (31 U.S.C. 3332).

___ (32) 52.232-36, Payment by Third Party (MAY 1999) (31 U.S.C. 3332).

___ (33) 52.239-1, Privacy or Security Safeguards (AUG 1996) (5 U.S.C. 552a).

___ (34)(i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (APR 2003) (46 U.S.C. Appx 1241 and 10 U.S.C. 2631).

___ (ii) Alternate I (APR 1984) of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items: [Contracting Officer check as appropriate.]

___ (1) 52.222-41, Service Contract Act of 1965, as Amended (MAY 1989) (41 U.S.C. 351, et seq.).

___ (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (MAY 1989) (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

___ (3) 52.222-43, Fair Labor Standards Act and Service Contract Act--Price Adjustment (Multiple Year and Option Contracts) (MAY 1989) (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

___ (4) 52.222-44, Fair Labor Standards Act and Service Contract Act--Price Adjustment (February 2002) (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

___ (5) 52.222-47, SCA Minimum Wages and Fringe Benefits Applicable to Successor Contract Pursuant to Predecessor Contractor Collective Bargaining Agreements (CBA) (May 1989) (41 U.S.C. 351, et seq.).

(d) Comptroller General Examination of Record. The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records--Negotiation.

(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e) (1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c), and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in paragraphs (i) through (vi) of this paragraph in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause--

(i) 52.219-8, Utilization of Small Business Concerns (May 2004) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $500,000 ($1,000,000 for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

(ii) 52.222-26, Equal Opportunity (April 2002) (E.O. 11246).

(iii) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (December 2001) (38 U.S.C. 4212).

(iv) 52.222-36, Affirmative Action for Workers with Disabilities (June 1998) (29 U.S.C. 793).

(v) 52.222-41, Service Contract Act of 1965, as Amended (May 1989), flow down required for all subcontracts subject to the Service Contract Act of 1965 (41 U.S.C. 351, et seq.).

(vi) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (April 2003) (46 U.S.C. Appx 1241 and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

(2) While not required, the contractor May include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

(End of clause)

52.232-34 PAYMENT BY ELECTRONIC FUNDS TRANSFER—OTHER THAN CENTRAL CONTRACTOR

REGISTRATION (MAY 1999)

(a) Method of payment. (1) All payments by the Government under this contract shall be made by electronic funds transfer (EFT) except as provided in paragraph (a)(2) of this clause. As used in this clause, the term "EFT" refers to the funds transfer and may also include the payment information transfer.

(2) In the event the Government is unable to release one or more payments by EFT, the Contractor agrees to either--

(i) Accept payment by check or some other mutually agreeable method of payment; or

(ii) Request the Government to extend payment due dates until such time as the Government makes payment by EFT (but see paragraph (d) of this clause).

(b) Mandatory submission of Contractor's EFT information. (1) The Contractor is required to provide the Government with the information required to make payment by EFT (see paragraph (j) of this clause). The Contractor shall provide this information directly to the office designated in this contract to receive that information (hereafter: "designated office") by 30 days (the Contracting Officer shall insert date, days after award, days before first request, the date specified for receipt of offers if the provision at 52.232-38 is utilized, or "concurrent with first request" as prescribed by the head of the agency; if not prescribed, insert "no later than 15 days prior to submission of the first request for payment"). If not otherwise specified in this contract, the payment office is the designated office for receipt of the Contractor's EFT information. If more than one designated office is named for the contract, the Contractor shall provide a separate notice to each office. In the event that the EFT information changes, the Contractor shall be responsible for providing the updated information to the designated office(s).

(2) If the Contractor provides EFT information applicable to multiple contracts, the Contractor shall specifically state the applicability of this EFT information in terms acceptable to the designated office. However, EFT information supplied to a designated office shall be applicable only to contracts that identify that designated office as the office to receive EFT information for that contract.

(c) Mechanisms for EFT payment. The Government may make payment by EFT through either the Automated Clearing House (ACH) network, subject to the rules of the National Automated Clearing House Association, or the Fedwire Transfer System. The rules governing Federal payments through the ACH are contained in 31 CFR part 210.

(d) Suspension of payment. (1) The Government is not required to make any payment under this contract until after receipt, by the designated office, of the correct EFT payment information from the Contractor. Until receipt of the correct EFT information, any invoice or contract financing request shall be deemed not to be a proper invoice for the purpose of prompt payment under this contract. The prompt payment terms of the contract regarding notice of an improper invoice and delays in accrual of interest penalties apply.

(2) If the EFT information changes after submission of correct EFT information, the Government shall begin using the changed EFT information no later than 30 days after its receipt by the designated office to the extent payment is made by EFT. However, the Contractor may request that no further payments be made until the updated EFT information is implemented by the payment office. If such suspension would result in a late payment under the prompt payment terms of this contract, the Contractor's request for suspension shall extend the due date for payment by the number of days of the suspension.

(e) Liability for uncompleted or erroneous transfers. (1) If an uncompleted or erroneous transfer occurs because the Government used the Contractor's EFT information incorrectly, the Government remains responsible for--

(i) Making a correct payment;

(ii) Paying any prompt payment penalty due; and

(iii) Recovering any erroneously directed funds.

(2) If an uncompleted or erroneous transfer occurs because the Contractor's EFT information was incorrect, or was revised within 30 days of Government release of the EFT payment transaction instruction to the Federal Reserve System, and--

(i) If the funds are no longer under the control of the payment office, the Government is deemed to have made payment and the Contractor is responsible for recovery of any erroneously directed funds; or

(ii) If the funds remain under the control of the payment office, the Government shall not make payment and the provisions of paragraph (d) shall apply.

(f) EFT and prompt payment. A payment shall be deemed to have been made in a timely manner in accordance with the prompt payment terms of this contract if, in the EFT payment transaction instruction released to the Federal Reserve System, the date specified for settlement of the payment is on or before the prompt payment due date, provided the specified payment date is a valid date under the rules of the Federal Reserve System.

(g) EFT and assignment of claims. If the Contractor assigns the proceeds of this contract as provided for in the assignment of claims terms of this contract, the Contractor shall require as a condition of any such assignment, that the assignee shall provide the EFT information required by paragraph (j) of this clause to the designated office, and shall be paid by EFT in accordance with the terms of this clause. In all respects, the requirements of this clause shall apply to the assignee as if it were the Contractor. EFT information that shows the ultimate recipient of the transfer to be other than the Contractor, in the absence of a proper assignment of claims acceptable to the Government, is incorrect EFT information within the meaning of paragraph (d) of this clause.

(h) Liability for change of EFT information by financial agent. The Government is not liable for errors resulting from changes to EFT information provided by the Contractor's financial agent.

(i) Payment information. The payment or disbursing office shall forward to the Contractor available payment information that is suitable for transmission as of the date of release of the EFT instruction to the Federal Reserve System. The Government may request the Contractor to designate a desired format and method(s) for delivery of payment information from a list of formats and methods the payment office is capable of executing. However, the Government does not guarantee that any particular format or method of delivery is available at any particular payment office and retains the latitude to use the format and delivery method most convenient to the Government. If the Government makes payment by check in accordance with paragraph (a) of this clause, the Government shall mail the payment information to the remittance address in the contract.

(j) EFT information. The Contractor shall provide the following information to the designated office. The Contractor may supply this data for this or multiple contracts (see paragraph (b) of this clause). The Contractor shall designate a single financial agent per contract capable of receiving and processing the EFT information using the EFT methods described in paragraph (c) of this clause.

(1) The contract number (or other procurement identification number).

(2) The Contractor's name and remittance address, as stated in the contract(s).

(3) The signature (manual or electronic, as appropriate), title, and telephone number of the Contractor official authorized to provide this information.

(4) The name, address, and 9-digit Routing Transit Number of the Contractor's financial agent.

(5) The Contractor's account number and the type of account (checking, saving, or lockbox).

(6) If applicable, the Fedwire Transfer System telegraphic abbreviation of the Contractor's financial agent.

(7) If applicable, the Contractor shall also provide the name, address, telegraphic abbreviation, and 9-digit Routing Transit Number of the correspondent financial institution receiving the wire transfer payment if the Contractor's financial agent is not directly on-line to the Fedwire Transfer System; and, therefore, not the receiver of the wire transfer payment.

(End of clause)

52.252-2 CLAUSES INCORPORATED BY REFERENCE (FEB 1998)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):

http://www.arnet.gov/far

(End of clause)

# GULF GROUP
## CLAIM ON DEMURRAGE
ON SUPPLY OF BOTTLED WATER
**NOVEMBER 2004 TO MARCH 2005**

| MONTH | DEMURRAGE PER DAYS | RATE PER DAYS IN KD | TOTAL AMOUNT IN KD |
|---|---|---|---|
| NOVEMBER | 1101 | 85.000 | 93,585.000 |
| DECEMBER | 675 | 85.000 | 57,375.000 |
| JANUARY | 607 | 85.000 | 51,595.000 |
| FEBRUARY | 487 | 85.000 | 41,395.000 |
| MARCH | 641 | 85.000 | 54,485.000 |
| TOTAL | 3511 | 85.000 | 298,435.000 |

EXHIBIT
"B"

**GULF HOLDING**
**CLAIM DEMURRAGE**
**MONTH OF NOVEMBER 2005**

| INVOICE NOS | CONVOY UNIT | DELIVERY NOTE | TRUCK NUMBER | DEMURRAGE DAYS | RATE | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| E2E0020257 | AHFJ312HN495 | GG/W/1001/04 | 147571 | 23 | 85.000 | 1,955.000 |
| E2E0020257 | AHFJ312HN495 | GG/W/1002/04 | 3755 | 23 | 85.000 | 1,955.000 |
| E2E0020257 | AHFJ312HN495 | GG/W/1003/04 | 3754 | 21 | 85.000 | 1,785.000 |
| E2E0020257 | AHFJ312HN495 | GG/W/1004/04 | 2579 | 20 | 85.000 | 1,700.000 |
| E2E0020257 | AHFJ312HN495 | GG/W/1005/04 | 183704 | 23 | 85.000 | 1,955.000 |
| E2E0020257 | AHFJ312HN495 | GG/W/1006/04 | 2604 | 13 | 85.000 | 1,105.000 |
| E2E0020257 | AHFJ312HN495 | GG/W/1007/04 | 111329 | 23 | 85.000 | 1,955.000 |
| E2E0020257 | AHFJ312HN495 | GG/W/1008/04 | 17948 | 23 | 85.000 | 1,955.000 |
| E2E0020257 | AHFJ312HN495 | GG/W/1009/04 | 17949 | 13 | 85.000 | 1,105.000 |
| E2E0020257 | AHFJ312HN495 | GG/W/1010/04 | 17947 | 20 | 85.000 | 1,700.000 |
| E2E0020257 | AHFJ312HN495 | GG/W/1011/04 | 2603 | 20 | 85.000 | 1,700.000 |
| E2E0020257 | AHFJ312HN495 | GG/W/1012/04 | 125044 | 21 | 85.000 | 1,785.000 |
| E2E0020257 | AHFJ312HN495 | GG/W/1013/04 | 6185 | 21 | 85.000 | 1,785.000 |
| E2E0020257 | AHFJ312HN495 | GG/W/1014/04 | 3928 | 23 | 85.000 | 1,955.000 |
| E2E0020257 | AHFJ312HN495 | GG/W/1015/04 | 14066 | 23 | 85.000 | 1,955.000 |
| E2E0020257 | AHFJ312HN495 | GG/W/1016/04 | 14261 | 23 | 85.000 | 1,955.000 |
| E2E0020257 | AHFJ312HN495 | GG/W/1017/04 | 13430 | 13 | 85.000 | 1,105.000 |
| E2E0020257 | AHFJ312HN495 | GG/W/1018/04 | 171014 | 20 | 85.000 | 1,700.000 |
| | AHFJ312HN495 | GG/W/1019/04 | 123379 | CANCELLED | 85.000 | |
| E2E0020257 | AHFJ312HN495 | GG/W/1020/04 | 170522 | 20 | 85.000 | 1,700.000 |
| E2E0020257 | AHFJ312HN495 | HEAD UNIT | 11307 | 23 | 85.000 | 1,955.000 |
| | | | TOTAL | 409 | | 34,765.000 |
| E2E0020635 | AHFJ325HN468 | GG/W/1021/04 | 16254 | 12 | 85.000 | 1,020.000 |
| E2E0020288 | AHFJ325HN468 | GG/W/1022/04 | 8759 | 12 | 85.000 | 1,020.000 |
| E2E0020288 | AHFJ325HN468 | GG/W/1023/04 | 11551 | 12 | 85.000 | 1,020.000 |
| E2E0020288 | AHFJ325HN468 | GG/W/1024/04 | 7029 | 12 | 85.000 | 1,020.000 |
| E2E0020288 | AHFJ325HN468 | GG/W/1025/04 | 3763 | 10 | 85.000 | 850.000 |
| E2E0020288 | AHFJ325HN468 | GG/W/1026/04 | 18973 | 12 | 85.000 | 1,020.000 |
| E2E0020288 | AHFJ325HN468 | GG/W/1027/04 | 18673 | 10 | 85.000 | 850.000 |
| E2E0020288 | AHFJ325HN468 | GG/W/1028/04 | 38541 | 12 | 85.000 | 1,020.000 |
| E2E0020288 | AHFJ325HN468 | GG/W/1029/04 | 13365 | 12 | 85.000 | 1,020.000 |
| E2E0020288 | AHFJ325HN468 | GG/W/1030/04 | 17856 | 12 | 85.000 | 1,020.000 |
| E2E0020257 | AHFJ325HN468 | GG/W/1031/04 | 123379 | 21 | 85.000 | 1,785.000 |
| E2E0020288 | AHFJ325HN468 | HEAD UNIT | 3719 | 12 | 85.000 | 1,020.000 |
| | | | TOTAL | 149 | | 12,665.000 |
| E2E0020477 | AHFJ325HN467 | GG/W/1032/04 | 5809 | 21 | 85.000 | 1,785.000 |
| E2E0020477 | AHFJ325HN467 | GG/W/1033/04 | 38623 | 21 | 85.000 | 1,785.000 |
| E2E0020409 | AHFJ325HN467 | GG/W/1034/04 | 2787 | 19 | 85.000 | 1,615.000 |
| E2E0020477 | AHFJ325HN467 | GG/W/1035/04 | 175488 | 21 | 85.000 | 1,785.000 |
| E2E0020289 | AHFJ325HN467 | GG/W/1036/04 | 38539 | 8 | 85.000 | 680.000 |
| E2E0020377 | AHFJ325HN467 | GG/W/1037/04 | 3678 | 17 | 85.000 | 1,445.000 |
| E2E0020477 | AHFJ325HN467 | GG/W/1038/04 | 3670 | 21 | 85.000 | 1,785.000 |
| E2E0020377 | AHFJ325HN467 | GG/W/1039/04 | 3677 | 16 | 85.000 | 1,360.000 |
| E2E0020477 | AHFJ325HN467 | GG/W/1040/04 | 3676 | 21 | 85.000 | 1,785.000 |
| E2E0020377 | AHFJ325HN467 | GG/W/1041/04 | 3869 | 17 | 85.000 | 1,445.000 |
| E2E0020477 | AHFJ325HN467 | HEAD UNIT | 3680 | 21 | 85.000 | 1,785.000 |
| | | | TOTAL | 203 | | 17,255.000 |
| E2E0020339 | AHFJ329HN462 | GG/W/1042/04 | 6931 | 12 | 85.000 | 1,020.000 |
| E2E0020339 | AHFJ329HN462 | GG/W/1043/04 | 13146 | 12 | 85.000 | 1,020.000 |
| E2E0020291 | AHFJ329HN462 | GG/W/1044/04 | 25793 | 8 | 85.000 | 680.000 |
| E2E0020291 | AHFJ329HN462 | GG/W/1045/04 | 18783 | 4 | 85.000 | 340.000 |
| E2E0020291 | AHFJ329HN462 | GG/W/1046/04 | 13133 | 4 | 85.000 | 340.000 |
| E2E0020339 | AHFJ329HN462 | GG/W/1047/04 | 13153 | 12 | 85.000 | 1,020.000 |
| E2E0020291 | AHFJ329HN462 | GG/W/1049/04 | 13145 | 7 | 85.000 | 595.000 |
| E2E0020291 | AHFJ329HN462 | GG/W/1050/04 | 2604 | 4 | 85.000 | 340.000 |

| | | | | | | |
|---|---|---|---|---|---|---|
| E2E0020291 | AHFJ329HN462 | GG/W/1051/04 | 13430 | 4 | 85.000 | 340.000 |
| E2E0020291 | AHFJ329HN462 | HEAD UNIT | 17949 | 4 | 85.000 | 340.000 |
| | | | TOTAL | 71 | | 6,035.000 |
| E2E0020340 | AHFJ330HN470 | GG/W/1052/04 | 2279 | 12 | 85.000 | 1,020.000 |
| E2E0020340 | AHFJ330HN470 | GG/W/1053/04 | 366525 | 12 | 85.000 | 1,020.000 |
| E2E0020340 | AHFJ330HN470 | GG/W/1054/04 | 176978 | 11 | 85.000 | 935.000 |
| E2E0020340 | AHFJ330HN470 | GG/W/1055/04 | 7263 | 11 | 85.000 | 935.000 |
| E2E0020292 | AHFJ330HN470 | GG/W/1056/04 | 125065 | 9 | 85.000 | 765.000 |
| E2E0020340 | AHFJ330HN470 | GG/W/1057/04 | 18855 | 12 | 85.000 | 1,020.000 |
| E2E0020340 | AHFJ330HN470 | GG/W/1058/04 | 183098 | 12 | 85.000 | 1,020.000 |
| E2E0020378 | AHFJ330HN470 | GG/W/1059/04 | 12633 | 11 | 85.000 | 935.000 |
| E2E0020408 | AHFJ330HN470 | GG/W/1060/04 | 2205 | 14 | 85.000 | 1,190.000 |
| E2E0020408 | AHFJ330HN470 | GG/W/1061/04 | 18264 | 14 | 85.000 | 1,190.000 |
| E2E0020637 | AHFJ330HN470 | HEADUNIT | 182129 | 11 | 85.000 | 935.000 |
| | | | TOTAL | 129 | | 10,965.000 |
| E2E0020293 | AHFJ831HN477 | GG/W/1062 | 111607 | 5 | 85.000 | 425.000 |
| E2E0020341 | AHFJ831HN477 | GG/W/1063 | 111606 | 10 | 85.000 | 850.000 |
| E2E0020293 | AHFJ831HN477 | GG/W/1064 | 111603 | 5 | 85.000 | 425.000 |
| E2E0020341 | AHFJ831HN477 | GG/W/1065 | 110963 | 10 | 85.000 | 850.000 |
| E2E0020341 | AHFJ831HN477 | GG/W/1066 | 18781 | 10 | 85.000 | 850.000 |
| E2E00E0341 | AHFJ831HN477 | GG/W/1067 | 18943 | 5 | 85.000 | 425.000 |
| E2E00E0341 | AHFJ831HN477 | GG/W/1068 | 18939 | 5 | 85.000 | 425.000 |
| E2E00E0341 | AHFJ831HN477 | GG/W/1069 | 18778 | 5 | 85.000 | 425.000 |
| E2E0020341 | AHFJ831HN477 | GG/W/1070 | 111654 | 10 | 85.000 | 850.000 |
| | | | TOTAL | 65 | | 5,525.000 |
| E2E0020504 | AHFJ344HN468 | GG/W/1071 | 2196 | 6 | 85.000 | 510.000 |
| E2E0021928 | AHFJ344HN468 | GG/W/1072 | 11031 | 15 | 85.000 | 1,275.000 |
| | AHFJ344HN468 | GG/W/1073 | 186572 | 3 | 85.000 | 255.000 |
| E2E0020640 | AHFJ344HN468 | GG/W/1074 | 17036 | 17 | 85.000 | 1,445.000 |
| | AHFJ344HN468 | GG/W/1075 | 38555 | NOT COMEBACK | | 0.000 |
| E2E0020640 | AHFJ344HN468 | GG/W/1076 | 180553 | 16 | 85.000 | 1,360.000 |
| E2E0020640 | AHFJ344HN468 | HEADUNIT | 3973 | 18 | 85.000 | 1,530.000 |
| | | | TOTAL | 75 | | 6,375.000 |

| | | |
|---|---|---|
| TOTAL FOR NOVEMBER | 1,101 | 93,585.000 |

GULF GROUP
CLAIM DEMURRAGE
DECEMBER

| EXPEDITORS INVOICE NOS | CONVOY UNIT | DELIVERY NOTE | TRUCK NOS | DEMURRAGE DAYS | RATE | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| E2E0020410 | AHFJ336HN490 | GG/W/1077/04 | 3736 | 6 | 85 | 510.000 |
| E2E0020345 | AHFJ336HN490 | GG/W/1078/04 | 19190 | 4 | 85 | 340.000 |
| E2E0020345 | AHFJ336HN490 | GG/W/1079/04 | 14115 | 4 | 85 | 340.000 |
| E2E0020345 | AHFJ336HN490 | GG/W/1080/04 | 13000 | 4 | 85 | 340.000 |
| E2E0020345 | AHFJ336HN490 | GG/W/1081/04 | 36633 | 4 | 85 | 340.000 |
| E2E0020641 | AHFJ336HN490 | GG/W/1082/04 | 2429 | 15 | 85 | 1,275.000 |
| E2E0020641 | AHFJ336HN490 | GG/W/1083/04 | 123380 | 15 | 85 | 1,275.000 |
| E2E0020641 | AHFJ336HN490 | GG/W/1084/04 | 2579 | 15 | 85 | 1,275.000 |
| E2E0021472 | AHFJ336HN490 | GG/W/1085/04 | 159925 | 9 | 85 | 765.000 |
| | | TOTAL | | 76 | | 6,460.000 |
| E2E0020757 | AHFJ341HN473 | GG/W/1086/04 | 2604 | 9 | 85 | 765.000 |
| E2E0020643 | AHFJ341HN473 | GG/W/1087/04 | 2603 | 10 | 85 | 850.000 |
| E2E0020643 | AHFJ341HN473 | GG/W/1088/04 | 25793 | 11 | 85 | 935.000 |
| E2E0020643 | AHFJ341HN473 | GG/W/1089/04 | 11551 | 9 | 85 | 765.000 |
| E2E0020643 | AHFJ341HN473 | GG/W/1090/04 | 11329 | 10 | 85 | 850.000 |
| E2E0020643 | AHFJ341HN473 | GG/W/1091/04 | 17948 | 9 | 85 | 765.000 |
| E2E0020643 | AHFJ341HN473 | GG/W/1092/04 | 13430 | 9 | 85 | 765.000 |
| E2E0020643 | AHFJ341HN473 | GG/W/1093/04 | 17949 | 9 | 85 | 765.000 |
| E2E0020643 | AHFJ341HN473 | GG/W/1094/04 | 17947 | 10 | 85 | 850.000 |
| | | TOTAL | | 86 | | 7,310.000 |
| E2E0020713 | AHF343HN841 | GG/W/1095/04 | 7296 | 7 | 85 | 595.000 |
| E2E0020713 | AHF343HN841 | GG/W/1096/04 | 13405 | 7 | 85 | 595.000 |
| E2E0020713 | AHF343HN841 | GG/W/1097/04 | 7029 | 9 | 85 | 765.000 |
| E2E0021193 | AHF343HN841 | GG/W/1098/04 | 176978 | 14 | 85 | 1,190.000 |
| E2E0020713 | AHF343HN841 | GG/W/1099/04 | 38972 | 7 | 85 | 595.000 |
| E2E0020713 | AHF343HN841 | GG/W/1100/04 | 179548 | 7 | 85 | 595.000 |
| E2E0020758 | AHF343HN841 | GG/W/1101/04 | 186572 | 9 | 85 | 765.000 |
| E2E0020713 | AHF343HN842 | GG/W/1103/04 | 110236 | 7 | 85 | 595.000 |
| | | TOTAL | | 67 | | 5,695.000 |
| E2E0020759 | AHFJ345HN462 | GG/W/1102/04 | 17901 | 12 | 85 | 1,020.000 |
| E2E0020759 | AHFJ345HN462 | GG/W/1104/04 | 13190 | 10 | 85 | 850.000 |
| E2E0020759 | AHFJ345HN462 | GG/W/1105/04 | 176192 | 10 | 85 | 850.000 |
| E2E0020759 | AHFJ345HN462 | GG/W/1106/04 | 11104 | 12 | 85 | 1,020.000 |
| E2E0020759 | AHFJ345HN462 | GG/W/1107/04 | 179148 | 12 | 85 | 1,020.000 |
| E2E0020759 | AHFJ345HN462 | GG/W/1108/04 | 122546 | 15 | 85 | 1,275.000 |
| E2E0020759 | AHFJ345HN462 | GG/W/1109/04 | 1455 | 11 | 85 | 935.000 |
| E2E0020759 | AHFJ345HN462 | GG/W/1110/04 | 18614 | 11 | 85 | 935.000 |
| E2E0020759 | AHFJ345HN462 | GG/W/1111/04 | 34858 | 11 | 85 | 935.000 |
| E2E0020759 | AHFJ345HN462 | GG/W/1112/04 | 110294 | 10 | 85 | 850.000 |
| E2E0020759 | AHFJ345HN462 | GG/W/1113/04 | 12884 | 10 | 85 | 850.000 |
| | | TOTAL | | 124 | | 10,540.000 |
| E2E0020760 | AHF351HN444 | GG/W/1114/04 | 13000 | 7 | 85 | 595.000 |
| E2E0020760 | AHF351HN444 | GG/W/1115/04 | 14115 | 7 | 85 | 595.000 |
| E2E0020760 | AHF351HN444 | GG/W/1116/04 | 8246 | 12 | 85 | 1,020.000 |
| E2E0020760 | AHF351HN444 | GG/W/1117/04 | 125066 | 8 | 85 | 680.000 |
| E2E0020760 | AHF351HN444 | GG/W/1118/04 | 7359 | 12 | 85 | 1,020.000 |
| E2E0020760 | AHF351HN444 | GG/W/1119/04 | 7196 | 12 | 85 | 1,020.000 |
| E2E0020760 | AHF351HN444 | GG/W/1120/04 | 36614 | 7 | 85 | 595.000 |
| E2E0020760 | AHF351HN444 | GG/W/1121/04 | 13605 | 8 | 85 | 680.000 |
| E2E0020760 | AHF351HN444 | GG/W/1122/04 | 3915 | 12 | 85 | 1,020.000 |
| | | TOTAL | | 85 | | 7,225.000 |
| E2E0020946 | AHFJ450HN488 | GG/W/123/04 | 113107 | 5 | 85 | 425.000 |
| E2E0020946 | AHFJ450HN488 | GG/W/124/04 | 3677 | 9 | 85 | 765.000 |
| E2E0022530 | AHFJ450HN488 | GG/W/125/04 | 3678 | 5 | 85 | 425.000 |
| E2E0020946 | AHFJ450HN488 | GG/W/126/04 | 111603 | 9 | 85 | 765.000 |

| | | | | | | |
|---|---|---|---|---|---|---|
| E2E0020946 | AHFJ450HN488 | GG/W/127/04 | 12633 | 5 | 85 | 425.000 |
| E2E0020946 | AHFJ450HN488 | GG/W/128/04 | 114276 | 6 | 85 | 510.000 |
| E2E0020946 | AHFJ450HN488 | GG/W/129/04 | 7287 | 5 | 85 | 425.000 |
| E2E0020946 | AHFJ450HN488 | GG/W/130/04 | 3765 | 9 | 85 | 765.000 |
| E2E0020946 | AHFJ450HN488 | GG/W/131/04 | 8185 | 6 | 85 | 510.000 |
| | | TOTAL | | 59 | | 5,015.000 |
| E2E0020958 | AHFJ355HN484 | GG/W/132/04 | 13341 | 12 | 85 | 1,020.000 |
| E2E0020949 | AHFJ355HN484 | GG/W/133/04 | 17513 | 11 | 85 | 935.000 |
| E2E0020949 | AHFJ355HN484 | GG/W/134/04 | 18673 | 11 | 85 | 935.000 |
| E2E0020949 | AHFJ355HN484 | GG/W/135/04 | 11551 | 11 | 85 | 935.000 |
| E2E0020949 | AHFJ355HN484 | GG/W/136/04 | 3928 | 11 | 85 | 935.000 |
| E2E0020958 | AHFJ355HN484 | GG/W/137/04 | 13405 | 12 | 85 | 1,020.000 |
| E2E0020949 | AHFJ355HN484 | GG/W/138/04 | 17052 | 11 | 85 | 935.000 |
| E2E0020958 | AHFJ355HN484 | GG/W/139/04 | 6149 | 12 | 85 | 1,020.000 |
| E2E0020949 | AHFJ355HN484 | GG/W/140/04 | 8759 | 11 | 85 | 935.000 |
| | | TOTAL | | 102 | | 8,670.000 |
| E2E0020950 | AHFJ357HN457 | GG/W/141/04 | 3680 | 8 | 85 | 680.000 |
| E2E0020959 | AHFJ357HN457 | GG/W/142/04 | 3670 | 9 | 85 | 765.000 |
| E2E0020959 | AHFJ357HN457 | GG/W/143/04 | 3676 | 9 | 85 | 765.000 |
| E2E0020950 | AHFJ357HN457 | GG/W/144/04 | 134028 | 8 | 85 | 680.000 |
| E2E0020950 | AHFJ357HN457 | GG/W/145/04 | 133283 | 9 | 85 | 765.000 |
| E2E0020950 | AHFJ357HN457 | GG/W/146/04 | 38708 | 7 | 85 | 595.000 |
| E2E0020950 | AHFJ357HN457 | GG/W/147/04 | 126710 | 9 | 85 | 765.000 |
| E2E0020950 | AHFJ357HN457 | GG/W/148/04 | 2579 | 8 | 85 | 680.000 |
| E2E0020959 | AHFJ357HN457 | GG/W/149/04 | 7029 | 9 | 85 | 765.000 |
| | | TOTAL | | 76 | | 8,460.000 |

**TOTAL FOR DECEMBER 675 57,375.000**

# GULF GROUP
# DEMURRAGE CLAIM
# JANUARY

| INVOICE NOS | CONVOY UNIT | DELIVERY NOTE | TRUCK NUMBER | DEMURRAGE DAYS PER | RATE | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| E2E0021344 | AHFJ002HN465 | GG/W/1153/04 | 13000 | 3 | 85.000 | 255.000 |
| E2E0021344 | AHFJ002HN465 | GG/W/1154/04 | 14115 | 3 | 85.000 | 255.000 |
| E2E0021344 | AHFJ002HN465 | GG/W/1155/04 | 3765 | 3 | 85.000 | 255.000 |
| E2E0021344 | AHFJ002HN465 | GG/W/1156/04 | 16263 | 3 | 85.000 | 255.000 |
| E2E0021344 | AHFJ002HN465 | GG/W/1157/04 | 13055 | 3 | 85.000 | 255.000 |
| E2E0021344 | AHFJ002HN465 | GG/W/1158/04 | 2693 | 3 | 85.000 | 255.000 |
| E2E0021344 | AHFJ002HN465 | GG/W/1159/04 | 147511 | 3 | 85.000 | 255.000 |
| E2E0021344 | AHFJ002HN465 | GG/W/1160/04 | 25793 | 3 | 85.000 | 255.000 |
| E2E0021344 | AHFJ002HN465 | GG/W/1161/04 | 138972 | 3 | 85.000 | 255.000 |
| | | TOTAL | | 27 | | 2,295.000 |
| E2E0021373 | AHFJ006HN456 | GG/W/1162/04 | 18673 | 8 | 85.000 | 680.000 |
| E2E0021373 | AHFJ006HN456 | GG/W/1163/04 | 17513 | 8 | 85.000 | 680.000 |
| E2E0021373 | AHFJ006HN456 | GG/W/1164/04 | 7029 | 8 | 85.000 | 680.000 |
| E2E0021373 | AHFJ006HN456 | GG/W/1165/04 | 113107 | 8 | 85.000 | 680.000 |
| E2E0021373 | AHFJ006HN456 | GG/W/1166/04 | 3680 | 8 | 85.000 | 680.000 |
| E2E0021373 | AHFJ006HN456 | GG/W/1167/04 | 17052 | 8 | 85.000 | 680.000 |
| E2E0021373 | AHFJ006HN456 | GG/W/1168/04 | 2579 | 8 | 85.000 | 680.000 |
| E2E0021373 | AHFJ006HN456 | GG/W/1169/04 | 126710 | 8 | 85.000 | 680.000 |
| E2E0021373 | AHFJ006HN456 | GG/W/1170/04 | 3754 | 8 | 85.000 | 680.000 |
| | | TOTAL | | 72 | | 6,120.000 |
| E2E0021370 | AHFJ010N458 | GG/W/1171/04 | 134028 | 7 | 85.000 | 595.000 |
| E2E0021370 | AHFJ010N458 | GG/W/1172/04 | 182560 | 7 | 85.000 | 595.000 |
| E2E0021370 | AHFJ010N458 | GG/W/1173/04 | 3677 | 9 | 85.000 | 765.000 |
| E2E0021370 | AHFJ010N458 | GG/W/1174/04 | 2279 | 9 | 85.000 | 765.000 |
| E2E0021370 | AHFJ010N458 | GG/W/1175/04 | 3676 | 9 | 85.000 | 765.000 |
| E2E0021370 | AHFJ010N458 | GG/W/1176/04 | 16785 | 9 | 85.000 | 765.000 |
| E2E0021370 | AHFJ010N458 | GG/W/1177/04 | 7277 | 9 | 85.000 | 765.000 |
| E2E0021370 | AHFJ010N458 | GG/W/1178/04 | 183098 | 9 | 85.000 | 765.000 |
| E2E0021370 | AHFJ010N458 | GG/W/1179/04 | 3597 | 9 | 85.000 | 765.000 |
| | | TOTAL | | 77 | | 6,545.000 |
| E2E0021374 | AHFA013HN453 | GG/W/1180 | 13000 | 6 | 85.000 | 510.000 |
| E2E0021374 | AHFA013HN453 | GG/W/1181 | 14115 | 4 | 85.000 | 340.000 |
| E2E0021374 | AHFA013HN453 | GG/W/1182 | 13341 | 6 | 85.000 | 510.000 |
| E2E0021374 | AHFA013HN453 | GG/W/1183 | 16263 | 6 | 85.000 | 510.000 |
| E2E0021374 | AHFA013HN453 | GG/W/1184 | 15243 | 8 | 85.000 | 680.000 |
| E2E0021374 | AHFA013HN453 | GG/W/1185 | 2693 | 8 | 85.000 | 680.000 |
| E2E0021798 | AHFA013HN453 | GG/W/1186 | 2553 | 23 | 85.000 | 1,955.000 |
| E2E0021374 | AHFA013HN453 | GG/W/1187 | 25793 | 6 | 85.000 | 510.000 |
| E2E0021798 | AHFA013HN453 | GG/W/1188 | 18572 | 23 | 85.000 | 1,955.000 |
| | | TOTAL | | 90 | | 7,650.000 |
| E2E0021471 | AHFJ017HN454 | GG/W/1189 | 3755 | 7 | 85.000 | 595.000 |
| E2E0021471 | AHFJ017HN454 | GG/W/1190 | 123379 | 7 | 85.000 | 595.000 |
| E2E0021471 | AHFJ017HN454 | GG/W/1191 | 18391 | 7 | 85.000 | 595.000 |
| E2E0021620 | AHFJ017HN454 | GG/W/1192 | 7287 | 13 | 85.000 | 1,105.000 |
| E2E0021471 | AHFJ017HN454 | GG/W/1194 | 13190 | 7 | 85.000 | 595.000 |
| E2E0021471 | AHFJ017HN454 | GG/W/1195 | 188496 | 7 | 85.000 | 595.000 |

# GULF GROUP
# DEMURRAGE CLAIM
# FOR THE MONTH OF FEBRUARY 2005

| INVOICE NOS | CONVOY UNIT | DELIVERY NOTE | TRUCK NUMBER | DEMURRAGE DAYS PER | RATE | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| E2E0021879 | AHFJ035HN456 | GG/W/1218 | 18391 | 8 | 85.000 | 680.000 |
| E2E0021879 | AHFJ035HN456 | GG/W/1219 | 3755 | 8 | 85.000 | 680.000 |
| E2E0021879 | AHFJ035HN456 | GG/W/1220 | 123379 | 8 | 85.000 | 680.000 |
| E2E0021879 | AHFJ035HN456 | GG/W/1221 | 126710 | 8 | 85.000 | 680.000 |
| E2E0021879 | AHFJ035HN456 | GG/W/1222 | 15243 | 8 | 85.000 | 680.000 |
| E2E0021879 | AHFJ035HN456 | GG/W/1223 | 2584 | 8 | 85.000 | 680.000 |
| E2E0021879 | AHFJ035HN456 | GG/W/1224 | 13420 | 8 | 85.000 | 680.000 |
| E2E0021879 | AHFJ035HN456 | GG/W/1225 | 14115 | 8 | 85.000 | 680.000 |
| E2E0021879 | AHFJ035HN456 | GG/W/1226 | 13000 | 8 | 85.000 | 680.000 |
| E2E0021879 | AHFJ035HN456 | GG/W/1227 | 16263 | 8 | 85.000 | 680.000 |
| E2E0021879 | AHFJ035HN456 | GG/W/1228 | 13405 | 8 | 85.000 | 680.000 |
| E2E0021879 | AHFJ035HN456 | GG/W/1229 | 7296 | 8 | 85.000 | 680.000 |
| E2E0021879 | AHFJ035HN456 | GG/W/1230 | 182560 | 8 | 85.000 | 680.000 |
| E2E0021879 | AHFJ035HN456 | GG/W/1231 | 134028 | 8 | 85.000 | 680.000 |
| E2E0021879 | AHFJ035HN456 | GG/W/1232 | 2715 | 8 | 85.000 | 680.000 |
| | | TOTAL | | 120 | | 10,200.000 |
| E2E0022231 | AHFJ047HN452 | GG/W/1233 | 13341 | 11 | 85.000 | 935.000 |
| E2E0022231 | AHFJ047HN452 | GG/W/1234 | 16785 | 11 | 85.000 | 935.000 |
| E2E0022231 | AHFJ047HN452 | GG/W/1235 | 18652 | 12 | 85.000 | 1,020.000 |
| E2E0022231 | AHFJ047HN452 | GG/W/1236 | 181269 | 12 | 85.000 | 1,020.000 |
| E2E0022231 | AHFJ047HN452 | GG/W/1237 | 8759 | 11 | 85.000 | 935.000 |
| E2E0022231 | AHFJ047HN452 | GG/W/1238 | 17513 | 11 | 85.000 | 935.000 |
| E2E0022231 | AHFJ047HN452 | GG/W/1239 | 17017 | 12 | 85.000 | 1,020.000 |
| E2E0022231 | AHFJ047HN452 | GG/W/1240 | 7277 | 11 | 85.000 | 935.000 |
| E2E0022231 | AHFJ047HN452 | GG/W/1241 | 16254 | 15 | 85.000 | 1,275.000 |
| E2E0022835 | AHFJ047HN452 | GG/W/1242 | 3953 | 12 | 85.000 | 1,020.000 |
| E2E0022231 | AHFJ047HN452 | GG/W/1243 | 3754 | 11 | 85.000 | 935.000 |
| E2E0022231 | AHFJ047HN452 | GG/W/1244 | 7771 | 11 | 85.000 | 935.000 |
| E2E0022231 | AHFJ047HN452 | GG/W/1245 | 38972 | 12 | 85.000 | 1,020.000 |
| E2E0022231 | AHFJ047HN452 | GG/W/1246 | 3719 | 12 | 85.000 | 1,020.000 |
| E2E0022231 | AHFJ047HN452 | GG/W/1247 | 17857 | 12 | 85.000 | 1,020.000 |
| | | TOTAL | | 176 | | 14,960.000 |
| E2E0022236 | AHFJ049HN457 | GG/W/1248 | 18391 | 10 | 85.000 | 850.000 |
| E2E0022236 | AHFJ049HN457 | GG/W/1249 | 2579 | 8 | 85.000 | 680.000 |
| E2E0022236 | AHFJ049HN457 | GG/W/1250 | 123379 | 8 | 85.000 | 680.000 |
| E2E0022236 | AHFJ049HN457 | GG/W/1251 | 126710 | 10 | 85.000 | 850.000 |
| E2E0022948 | AHFJ049HN457 | GG/W/1252 | 17052 | 8 | 85.000 | 680.000 |
| E2E0022236 | AHFJ049HN457 | GG/W/1253 | 13448 | 8 | 85.000 | 680.000 |
| E2E0022236 | AHFJ049HN457 | GG/W/1254 | 13420 | 8 | 85.000 | 680.000 |
| E2E0022236 | AHFJ049HN457 | GG/W/1255 | 14115 | 11 | 85.000 | 935.000 |
| E2E0022236 | AHFJ049HN457 | GG/W/1256 | 11830 | 4 | 85.000 | 340.000 |
| E2E0022236 | AHFJ049HN457 | GG/W/1257 | 16263 | 8 | 85.000 | 680.000 |
| E2E0022236 | AHFJ049HN457 | GG/W/1258 | 13405 | 11 | 85.000 | 935.000 |
| E2E0022236 | AHFJ049HN457 | GG/W/1259 | 6149 | 5 | 85.000 | 425.000 |
| E2E0022236 | AHFJ049HN457 | GG/W/1260 | 182560 | 8 | 85.000 | 680.000 |
| E2E0022236 | AHFJ049HN457 | GG/W/1261 | 134028 | 8 | 85.000 | 680.000 |
| E2E0022236 | AHFJ049HN457 | GG/W/1262 | 38539 | 7 | 85.000 | 595.000 |
| | | TOTAL | | 122 | | 10,370.000 |
| E2E0022526 | AHFJ058HN458 | GG/W/1263 | 2715 | 7 | 85.000 | 595.000 |
| E2E0022526 | AHFJ058HN458 | GG/W/1264 | 176192 | 7 | 85.000 | 595.000 |
| E2E0022526 | AHFJ058HN458 | GG/W/1265 | 38538 | 6 | 85.000 | 510.000 |
| E2E0022526 | AHFJ058HN458 | GG/W/1266 | 3928 | 6 | 85.000 | 510.000 |
| E2E0022526 | AHFJ058HN458 | GG/W/1267 | 2202 | 6 | 85.000 | 510.000 |
| E2E0022526 | AHFJ058HN458 | GG/W/1268 | 12633 | 6 | 85.000 | 510.000 |
| E2E0022526 | AHFJ058HN458 | GG/W/1269 | 18614 | 6 | 85.000 | 510.000 |

| | | | | | | |
|---|---|---|---|---|---|---|
| E2E0023405 | AHFJ058HN458 | GG/W/1270 | 122545 | 2 | 85.000 | 170.000 |
| E2E0022526 | AHFJ058HN458 | GG/W/1271 | 16907 | 6 | 85.000 | 510.000 |
| E2E0023405 | AHFJ058HN458 | GG/W/1272 | 175020 | 2 | 85.000 | 170.000 |
| E2E0023405 | AHFJ058HN458 | GG/W/1273 | 38725 | 2 | 85.000 | 170.000 |
| E2E0022526 | AHFJ058HN458 | GG/W/1275 | 39519 | 7 | 85.000 | 595.000 |
| E2E0022526 | AHFJ058HN458 | GG/W/1276 | 38727 | 6 | 85.000 | 510.000 |
| | | TOTAL | | 69 | | 5,865.000 |

| | | |
|---|---|---|
| TOTAL FOR FEBRUARY | 487.00 | 41,395.000 |

# GULF GROUP
# DEMURRAGE
# FOR THE MONTH OF MARCH 2005

| INVOICE NOS | CONVOY NOS | DELIVERY NOTE | TRUCK NOS | DEMURRAGE DAYS | RATE | TOTAL IN KD |
|---|---|---|---|---|---|---|
| | AHFJ065HN453 | 1274 | 38727 | 6 | 85.000 | 510.000 |
| E2E0022527 | AHFJ065HN453 | 1277 | 13341 | 2 | 85.000 | 170.000 |
| E2E0022527 | AHFJ065HN453 | 1278 | 17513 | 3 | 85.000 | 255.000 |
| E2E0022527 | AHFJ065HN453 | 1279 | 11551 | 2 | 85.000 | 170.000 |
| E2E0022527 | AHFJ065HN453 | 1280 | 7771 | 2 | 85.000 | 170.000 |
| E2E0022527 | AHFJ065HN453 | 1281 | 8759 | 3 | 85.000 | 255.000 |
| E2E0022527 | AHFJ065HN453 | 1282 | 16254 | 1 | 85.000 | 85.000 |
| E2E0022527 | AHFJ065HN453 | 1283 | 13420 | 3 | 85.000 | 255.000 |
| E2E0022862 | AHFJ065HN453 | 1284 | 18652 | 2 | 85.000 | 170.000 |
| E2E0022527 | AHFJ065HN453 | 1285 | 181269 | 3 | 85.000 | 255.000 |
| E2E0022527 | AHFJ065HN453 | 1286 | 16263 | 1 | 85.000 | 85.000 |
| E2E0022527 | AHFJ065HN453 | 1287 | 36633 | 2 | 85.000 | 170.000 |
| | AHFJ065HN453 | 1288 | 7296 | 3 | 85.000 | 255.000 |
| E2E0022527 | AHFJ065HN453 | 1289 | 18256 | 2 | 85.000 | 170.000 |
| E2E0022527 | AHFJ065HN453 | 1290 | 134028 | 2 | 85.000 | 170.000 |
| E2E0022527 | AHFJ065HN453 | 1291 | 17017 | 2 | 85.000 | 170.000 |
| E2E0022527 | AHFJ065HN453 | 1292 | 15243 | 3 | 85.000 | 255.000 |
| | | TOTAL | | 36 | | 3,060.000 |
| | | | | | | |
| E2E0022528 | AHFJ067HN452 | 1293 | 13405 | 1 | 85.000 | 85.000 |
| E2E0022917 | AHFJ067HN452 | 1296 | 11819 | 1 | 85.000 | 85.000 |
| E2E0022917 | AHFJ067HN452 | 1299 | 36641 | 2 | 85.000 | 170.000 |
| E2E0022528 | AHFJ067HN452 | 1300 | 38972 | 2 | 85.000 | 170.000 |
| E2E0022917 | AHFJ067HN452 | 1302 | 35064 | 2 | 85.000 | 170.000 |
| E2E0022917 | AHFJ067HN452 | 1303 | 2293 | 2 | 85.000 | 170.000 |
| E2E0022528 | AHFJ067HN452 | 1304 | 13911 | 1 | 85.000 | 85.000 |
| E2E0022528 | AHFJ068HN463 | 1306 | 18391 | 2 | 85.000 | 170.000 |
| E2E0022528 | AHFJ068HN463 | 1307 | 122544 | 2 | 85.000 | 170.000 |
| E2E0022917 | AHFJ068HN463 | 1308 | 174841 | 1 | 85.000 | 85.000 |
| | | TOTAL | | 16 | | 1,360.000 |
| | | | | | | |
| E2E0022877 | AHFJ073HN476 | 1309 | 2715 | 6 | 85.000 | 510.000 |
| E2E0022877 | AHFJ073HN476 | 1311 | 2202 | 5 | 85.000 | 425.000 |
| E2E0022877 | AHFJ073HN476 | 1312 | 13000 | 5 | 85.000 | 425.000 |
| E2E0022877 | AHFJ073HN476 | 1313 | 13448 | 6 | 85.000 | 510.000 |
| E2E0022677 | AHFJ073HN476 | 1314 | 7277 | 5 | 85.000 | 425.000 |
| E2E0022877 | AHFJ073HN476 | 1315 | 113107 | 6 | 85.000 | 510.000 |
| E2E0022877 | AHFJ073HN476 | 1316 | 111258 | 6 | 85.000 | 510.000 |
| E2E0022877 | AHFJ073HN476 | 1317 | 17857 | 5 | 85.000 | 425.000 |
| E2E0022877 | AHFJ073HN476 | 1318 | 36652 | 5 | 85.000 | 425.000 |
| E2E0022877 | AHFJ073HN476 | 1319 | 14426 | 6 | 85.000 | 510.000 |
| E2E0022877 | AHFJ073HN476 | 1320 | 4834 | 5 | 85.000 | 425.000 |
| E2E0022877 | AHFJ073HN476 | 1321 | 35413 | 5 | 85.000 | 425.000 |
| E2E0022877 | AHFJ073HN476 | 1322 | 3719 | 6 | 85.000 | 510.000 |
| E2E0022877 | AHFJ073HN476 | 1323 | 35265 | 6 | 85.000 | 510.000 |
| E2E0022877 | AHFJ073HN476 | 1324 | 1268868 | 6 | 85.000 | 510.000 |
| | | TOTAL | | 83 | | 7,055.000 |
| | | | | | | |
| E2E0022877 | AHFJ073HN477 | 1310 | 176192 | 6 | 85.000 | 510.000 |
| E2E0022878 | AHFJ076HN454 | 1325 | 14115 | 6 | 85.000 | 510.000 |
| E2E0022878 | AHFJ076HN454 | 1326 | 13341 | 6 | 85.000 | 510.000 |
| E2E0022878 | AHFJ076HN454 | 1327 | 17513 | 6 | 85.000 | 510.000 |
| E2E0022878 | AHFJ076HN454 | 1328 | 122545 | 6 | 85.000 | 510.000 |
| E2E0022878 | AHFJ076HN454 | 1329 | 8759 | 6 | 85.000 | 510.000 |
| E2E0022878 | AHFJ076HN454 | 1330 | 16263 | 5 | 85.000 | 425.000 |
| E2E0022878 | AHFJ076HN454 | 1331 | 13405 | 5 | 85.000 | 425.000 |
| E2E0022878 | AHFJ076HN454 | 1332 | 14912 | 6 | 85.000 | 510.000 |
| E2E0022878 | AHFJ076HN454 | 1333 | 182560 | 5 | 85.000 | 425.000 |
| E2E0022878 | AHFJ076HN454 | 1334 | 134028 | 5 | 85.000 | 425.000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| E2E0022878 | AHFJ076HN454 | | 1335 | 181269 | 6 | 85.000 | 510.000 |
| E2E0022878 | AHFJ076HN454 | | 1336 | 12726 | 5 | 85.000 | 425.000 |
| E2E0022878 | AHFJ076HN454 | | 1337 | 38539 | 5 | 85.000 | 425.000 |
| E2E0022878 | AHFJ076HN454 | | 1338 | 13911 | 6 | 85.000 | 510.000 |
| E2E0022878 | AHFJ076HN454 | | 1339 | 150203 | 6 | 85.000 | 510.000 |
| E2E0022878 | AHFJ076HN454 | | 1340 | 174841 | 5 | 85.000 | 425.000 |
| | | TOTAL | | | 95 | | 8,075.000 |
| E2E0023385 | AHFJ083HN457 | | 1341 | 7296 | 16 | 85.000 | 1,360.000 |
| E2E0023385 | AHFJ083HN457 | | 1342 | 13420 | 14 | 85.000 | 1,190.000 |
| E2E0023385 | AHFJ083HN457 | | 1343 | 11830 | 15 | 85.000 | 1,275.000 |
| E2E0023385 | AHFJ083HN457 | | 1344 | 170170 | 15 | 85.000 | 1,275.000 |
| E2E0023385 | AHFJ083HN457 | | 1345 | 18390 | 15 | 85.000 | 1,275.000 |
| E2E0023385 | AHFJ083HN457 | | 1346 | 17771 | 15 | 85.000 | 1,275.000 |
| E2E0023385 | AHFJ083HN457 | | 1347 | 15243 | 16 | 85.000 | 1,360.000 |
| E2E0023385 | AHFJ083HN457 | | 1348 | 11551 | 7 | 85.000 | 595.000 |
| E2E0023385 | AHFJ083HN457 | | 1349 | 16254 | 16 | 85.000 | 1,360.000 |
| E2E0023385 | AHFJ083HN457 | | 1350 | 112440 | 15 | 85.000 | 1,275.000 |
| E2E0023385 | AHFJ083HN457 | | 1351 | 36641 | 15 | 85.000 | 1,275.000 |
| E2E0023385 | AHFJ083HN457 | | 1352 | 16316 | 14 | 85.000 | 1,190.000 |
| E2E0023385 | AHFJ083HN457 | | 1353 | 36637 | 14 | 85.000 | 1,190.000 |
| E2E0023385 | AHFJ083HN457 | | 1354 | 16785 | 15 | 85.000 | 1,275.000 |
| E2E0023385 | AHFJ083HN457 | | 1355 | 2579 | 15 | 85.000 | 1,275.000 |
| E2E0023385 | AHFJ083HN457 | | 1356 | 3972 | 16 | 85.000 | 1,360.000 |
| | | TOTAL | | | 233 | | 19,805.000 |
| E2E0023386 | AHFJ086HN452 | | 1357 | 1300 | 13 | 85.000 | 1,105.000 |
| E2E0023386 | AHFJ086HN452 | | 1358 | 113107 | 13 | 85.000 | 1,105.000 |
| E2E0023386 | AHFJ086HN452 | | 1359 | 126868 | 13 | 85.000 | 1,105.000 |
| E2E0023386 | AHFJ086HN452 | | 1360 | 39071 | 13 | 85.000 | 1,105.000 |
| E2E0023386 | AHFJ086HN452 | | 1361 | 3719 | 12 | 85.000 | 1,020.000 |
| E2E0023386 | AHFJ086HN452 | | 1362 | 28206 | 13 | 85.000 | 1,105.000 |
| E2E0023386 | AHFJ086HN452 | | 1363 | 13936 | 13 | 85.000 | 1,105.000 |
| E2E0023386 | AHFJ086HN452 | | 1364 | 3663 | 12 | 85.000 | 1,020.000 |
| E2E0023386 | AHFJ086HN452 | | 1365 | 7277 | 13 | 85.000 | 1,105.000 |
| E2E0023386 | AHFJ086HN452 | | 1366 | 36601 | 12 | 85.000 | 1,020.000 |
| E2E0023386 | AHFJ086HN452 | | 1367 | 7497 | 13 | 85.000 | 1,105.000 |
| E2E0023386 | AHFJ086HN452 | | 1368 | 7218 | 13 | 85.000 | 1,105.000 |
| E2E0023386 | AHFJ086HN452 | | 1369 | 6279 | 12 | 85.000 | 1,020.000 |
| E2E0023386 | AHFJ086HN452 | | 1370 | 2715 | 13 | 85.000 | 1,105.000 |
| | | TOTAL | | | 178 | | 15,130.000 |
| | | TOTAL FOR MARCH | | | 641 | | 54,485.000 |

**Suresh**

---

**From:** Cockerham, John MAJ ARCENT-KU [John.Cockerham@arifjan.arcent.army.mil]
**Sent:** Sunday, October 09, 2005 10:22 AM
**To:** Suresh
**Subject:** FW: Bottle Water

Surresh here is an example from the previous email, I need it as an attachment with the original date that you all use on the first original letter that you sent on 3 Aril 05. I need two letters.
Thanks

EXHIBIT
"C"

From: "Cockerham, John MAJ ARCENT-KU" <John.Cockerham@arifjan.arcent.army.mil>

>Subject: Bottle Water
>Date: Tue, 5 Apr 2005 19:06:35 -0000
>
>Dear Vendors we have constantly been bombarded with Demurge charges and
>claims from trucks being tied up over 7 days or water held up at the border.
>Vehicles shot up or vehicles having to bring equipment back on the return
>trip. Therefore to elimate all the paperwork and cliams. The C-4 and I
>have sit down and calculated the average claims and came up with an average
>number of 2.578 KWD to cover the case of water, the delivery plus the
>demurge charges. This will make business easier for us and it will get your
>money quicker rather than the claims process. All previous claims prior to
>1 APR 05 will continue to be processed. We hope that you will find our
>offer more than accepted with the increase in your quote. Some will gain
>more other, sometimes this will be to the government economic advantage and
>other times it will be to the vendors advantage so it will balance out at
>the end. Thank you all
>
>Please Reply on your official company letter head that you accept the newly
>adjusted rate per case to cover these cost in exchange for not making any
>more demurge claims past 1 April 05.
>
>Please reply on your official company letterhead By 1200 hours tomorrow 6
>APR 05. You should have your own insurance.
>Phone 944-2847
>Thank You
>
>Major Cockerham

---

Express yourself instantly with MSN Messenger! MSN Messenger Download today it's FREE!

# BPA CALL

| BPA MASTER NUMBER | BPA CALL NUMBER | DATE OF CALL | DISCOUNT TERMS |
|---|---|---|---|
| W912D1-04-A-0052 | 0003 | 01-Dec-2004 | NET 30 |

**ISSUED BY** CODE W912D1
U.S. ARMY CONTRACTING COMMAND SWA-KUWAIT
HQ BLDG 216
CAMP ARIFJAN AE 09366

**PAYMENT WILL BE MADE BY** CODE S09076
ARCENT-KU-FINANCE SUPPORT UNIT
ATTN: COMMERCIAL ACCOUNTS
FAX: 965-469-5219; PHONE 965-468-2051
APO AE 09889-9900

**CONTRACTOR** CODE
GULF GROUP GENERAL ENTERPRISES CO. W.L.L
SALHIYA COMMERCIAL COMPLEX 4TH ENTRANCE 2
SAFAT, KUWAIT 13077

**SHIP TO** CODE

See Line Items

| Line Item Summary | | |
|---|---|---|
| | Total Cost | KWD180,000.00 |
| | Total Funding | $642,857.14 |

Accounting and Appropriation Data

**See Schedule**

John L Cockerham Jr
TEL: 011-965-389-2138
EMAIL: john.cockerham@arifjan.arcent.army.mil

BY: COCKERHAM, JOHN L. MAJ
CONTRACTING/ORDERING OFFICER

EXHIBIT "D"

| NSN | Var. in Qty. (+) % | Var. in Qty. (-) % | BN/SS | Quantity | Unit of Issue | Unit Price | Amount |
|---|---|---|---|---|---|---|---|
| 0003 TAJI H2O | | | | 75,000.00 | CA | KWD2.40 | KWD180,000.00 |
| | | | PR: W91XRV42380402 | | | Total Funded Amount : | $642,857.14 |

The contractor shall deliver 75,000 cases of CENTCOM approved bottle water to TAJI (185th). The contractor is responsible to have all invoices signed at each location. Each contracting officer representative shall sign the invoices as being "Received and Accepted".

Taji (185th): approximately 18,750 cases per week for 4 weeks.

Period of performance is 1 Dec 04 thru 31 Dec 04.

The POC is CPT Bretthorst (DNVT: 302-529-3521).

Total Cost: KWD180,000.00

Legend:
CA - Case

## DELIVERY INFORMATION

0003

## ACCOUNTING AND APPROPRIATION DATA

AA OiF21420100111004X000026FBPAMPS121219FG
AMOUNT: $642,857.14

**CLIN/ACRN Cross Reference**

| CLIN | ACRN | Amount |
|---|---|---|
| 0003 | AA | $642,857.14 |

# BPA CALL

| BPA MASTER NUMBER | BPA CALL NUMBER | DATE OF CALL | DISCOUNT TERMS |
|---|---|---|---|
| W912D1-04-A-0052 | 0004 | 27-Dec-2004 | Net 30 |

| ISSUED BY CODE W912D1 | PAYMENT WILL BE MADE BY CODE |
|---|---|
| U.S. ARMY CONTRACTING COMMAND SWA-KUWAIT<br>HQ BLDG 216<br>CAMP ARIFJAN AE 09366 | |

| CONTRACTOR CODE | SHIP TO CODE |
|---|---|
| GULF GROUP GENERAL ENTERPRISES CO. W.L.L<br>SALHIYA COMMERCIAL COMPLEX 4TH ENTRANCE 2<br>SAFAT, KUWAIT 13077 | See Line Items |

| Line Item Summary | | | Accounting and Appropriation Data |
|---|---|---|---|
| | Total Cost | KWD315,000.00 | See Schedule |
| | Total Funding | $1,125,000.00 | |

John L Cockerham Jr

TEL: 011-965-389-2136

EMAIL: john.cockerham@arifjan.arcent.army.mil

BY: COCKERHAM, JOHN L MAJ

CONTRACTING/ORDERING OFFICER

EXHIBIT

| NSN | Var. in Qty. (+) % | Var. in Qty. (-) % | BN/SS | Quantity | Unit of Issue | Unit Price | Amount |
|---|---|---|---|---|---|---|---|
| 0003 | | | | 131,250.00 | CA | KWD2.40 | KWD315,000.00 |
| Water Delivery | | | PR: W91XRV42380402 | | | Total Funded Amount : | $1,125,000.00 |

Gulf Group General Enterprises Co W.L.L
The contractor shall deliver 75,000 cases of CENTCOM approved bottle water to TAJI (185th). The contractor is responsible to have all invoices signed at each location. Each contracting officer representative shall sign the invoices as being "Received and Accepted".
Taji (185th): approximately 18,750 cases per week for 4 weeks.
Period of performance is 1 Jan 05 thru 31 Jan 05.
The POC is CPT Bretthorst (DNVT: 302-529-3521).

Gulf Group General Enterprises Co W.L.L
The contractor shall deliver 56,250 cases of CENTCOM approved bottle water to TAJI (185th). The contractor is responsible to have all invoices signed at each location. Each contracting officer representative shall sign the invoices as being "Received and Accepted".
Taji (185th): approximately 18,750 cases per week for 3 weeks.
Period of performance is 1 Feb 05 thru 28 Feb 05.
The POC is CPT Bretthorst (DNVT: 302-529-3521).

Total Cost: KWD315,000.00

Legend:
CA - Case

**DELIVERY INFORMATION**

0003

## ACCOUNTING AND APPROPRIATION DATA

AA OIF21420100111004X000026FBPAMPS121219FG
AMOUNT: $1,125,000.00

## CLIN/ACRN Cross Reference

| CLIN | ACRN | Amount |
|---|---|---|
| 0003 | AA | $1,125,000.00 |

**Gulf Group**
**GENERAL ENTERPRISES CO. W.L.L.**

4th Entrance, 2nd Floor
Salhiya Commercial Complex
P.O. Box 21613, Safat 13077, KUWAIT
Tel. : + 965 246 8111
Fax.: + 965 246 8222

6th April, 2005

**MAJ. JOHN COCKERHAM**
**0-4 CONTRACTING OFFICER**
**US ARMY**
**KUWAIT**

**Subject: New From Contracting. K.D.2.578 per Cases of water**

Dear Major Cockerham,

Gulf Group is pleased to confirm that we received the revised price of K.D.2.578 per Cases for shipment of water to Iraq. And we accept the newly adjusted rate per case to cover the cost in exchange for not making any more demurrage claims past 1 April 05.

Sincerely yours,

Saud Al Tawash
General Manager
Mob: +965 962 3434

EXHIBIT

**GULF GROUP**
**GENERAL ENTERPRISES CO. W.L.L.**

Salhiya Commercial Complex
4th Entrance, 2nd Floor
P.O. Box 21613
Safat 13077
KUWAIT.

Tel. : (965) 2468 111
Fax : (965) 2468 222

December 1, 2005

**Major John Cockerham**
**0-4 Contracting officer**
Camp Arifjan
Kuwait
Tel: 389-2349
Fax: 389 2333

**Reference: Bottled water Contract # W912D1-04-A-0052**

**Subject: Claim For Demurrage on Shipment of Bottled water to Iraq.**

Dear Major Cockerham,

We hereby submitting our claim for Demurrage for the Supply of Bottled water to Iraq as per the above contract with US Army Contracting Command SWA Kuwait (ARCENT).

In furtherance of the contract we shipped the bottled water to Iraq. But we have incurred delay (demurrage) and damages for delivering bottled water to Iraq. Even though we have had taken all the necessary requirements to perform its obligations both anticipated and ultimate as per the scope of work and were doing the services. During the transport and delivery of bottled water to different destination in Iraq; we have faced with unreasonable delay and delivery of bottled water in Iraq.

During the performance on the contract by the delay and demurrage of the shipment inside the Iraq; we have had an irreparable injury and loss. So we request your kind attention and approval for our claim on demurrages and submitting this claim with following documents for reimbursement of our demurrage payments.

The following documents are enclosed for your review and verification.

1) Form 1436 Settlement proposal
2) Claim and Settlement Offer
3) Appendix: 1. Contracts
4) Appendix: 2. Expense Table
5) Appendix: 3. Gant Chart with tables
6) Appendix: 4. Expense Documents

If you have any queries, please call me at your convenient time and date. And we are ready to any explanations and details with respect to the claim.

Thanks and regards,

Saud Al Tawash
General Manger
Cell: +965 962-3434

EXHIBIT
"G"

Received By
Major Cockerham
15 Dec 05
John Cockerham

# CLAIM & SETTLEMENT OFFER FOR BOTTLED WATER CONTRACT #W912D1-04-A-0052

## INTRODUCTION

This is an offer for settlement under FAR Part 49 with regard to contract #W912D1-04-A-0052 which is between US Army Contracting Command SWA-Kuwait ("Arcent"), and Gulf Group General Enterprises Co. W.L.L., ("Gulf Enterprises") awarded in 2004, with the period of performance being between November 01, 2004, and March 31, 2005. A copy of the contract is found in Appendix 1. This offer includes reimbursement for demurrage charges. Gulf Enterprises is willing at this time to accept **298.435 KD** as full and final settlement. Gulf Group Enterprises agrees to waive any and all of its settlement expenses as part of its settlement offer

Pursuant to Part 49.206-1(c) of the Federal Acquisition Regulations (FAR), the forms provided in Part 49.602 are determined to be inadequate for the settlement of this contract. However, SF 1436 is completed to the extent possible for the benefit of Army record keeping.

## BACKGROUND

The subject contract is the result of the Arcent BPA #W912D1-04-A-0052 issued in 2004, which had been discussed and negotiated up to the contract award date. The contract subject matter relates to the provision of water to base camps for OIF operations (Iraq).

In furtherance of the contract and its preceding negotiations Gulf Enterprises took immediate steps to acquire water and to deliver it as per contract specifications. Throughout the period of this claim (November 1, 2004-March 31, 2005) Gulf Enterprises followed Arcent requirements for shipment which resulted in delays (by the US military) that resulted in extra costs to Gulf Enterprises, and such delays resulted in the demurrage charges as provided in a summary table and detailed line item listing at Appendix 3.

## TOTAL CLAIM AMOUNT

The total claim amount is for all demurrage charges for delays for the period November 1, 2004-March 31, 2005, as contained on Appendix 3, in the total amount of 298.435 KD.

## OFFER OF SETTLEMENT

The FARs allow for reimbursement of extra costs incurred for delays not caused by the contractor who is fulfilling a contract obligation for the government. The FAR body of law provides that the unbargained for extra costs due to delays not caused by the contractor, but experienced due to requirements of the government (such as logistical convoy requirements).

Here, Gulf Enterprises fully complied with its requirements and performed for the agreed period and incurred additional charges due to delays not cause by Gulf Enterprises, and not provided for in the biding process under for the BPA. As a consequence it should be allowed its reasonable demurrage charges as costs incurred in furtherance of the contract.

CONCLUSION

FAR Part 49.201(b) states that "The primary objective is to negotiate a settlement by agreement. The parties may agree upon a total amount to be paid the contractor without agreeing on or segregating the particular elements of costs or profit comprising this amount."

For the forgoing reasons, Gulf Enterprises seeks 298,435KD. Gulf Group Enterprises agrees to waive any and all of its settlement expenses as part of its settlement offer.

CERTIFICATION

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable, and that I am duly authorized to certify the claim on behalf of the contractor.

Ferdinand F. Peters, MN Atty Lic. #157041
Lakes & Plains Office Building
842 Raymond Avenue, Suite 201
St. Paul, Minnesota 55114
(651) 647-6250
Attorney for Gulf Group
General Enterprises, W.L.L.

# SETTLEMENT PROPOSAL (TOTAL COST BASIS)

OMB No.: 9000-0012
Expires: 06/30/2004

Public reporting burden for this collection of information is estimated to average 2.5 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVA), Regulatory and Federal Assistance Publications Division, GSA, Washington, DC 20405.

**FOR USE BY A FIXED-PRICE PRIME CONTRACTOR OR FIXED-PRICE SUBCONTRACTOR**

| | |
|---|---|
| THIS PROPOSAL APPLIES TO *(Check one)*: ☐ A PRIME CONTRACT WITH THE GOVERNMENT ☐ SUBCONTRACT OR PURCHASE ORDER | COMPANY: GULF GROUP GENERAL ENTERPRISES CO. W.L.L. |
| SUBCONTRACT OR PURCHASE ORDER NO(S): | STREET ADDRESS: SALHIYA COMMERCIAL COMPLEX 4TH ENTRANCE |
| **CONTRACTOR WHO SENT NOTICE OF TERMINATION** | CITY AND STATE *(Include ZIP Code)*: SAFAT 13077 |
| NAME: MAJOR JOHN COCKERHAM | NAME OF GOVERNMENT AGENCY: US ARMY CONTRACTING COMMAND SWA-KUWAIT |
| ADDRESS *(Include ZIP Code)*: CAMP ARIFJAN, KUWAIT | GOVERNMENT PRIME CONTRACT NO.: W912D1-04-A-0052 / CONTRACTOR'S REFERENCE NO.: |
| If moneys payable under the contract have been assigned, give the following: NAME OF ASSIGNEE | EFFECTIVE DATE OF TERMINATION: |
| ADDRESS *(Include ZIP Code)*: | PROPOSAL NO.: 1 / CHECK ONE: ☐ INTERIM ☒ FINAL |

SF 1439, SCHEDULE OF ACCOUNTING INFORMATION ☐ IS ☐ IS NOT ATTACHED *(If not, explain below)*

**ACCOUNTING INFORMATION IS PROVIDED IN ATTACHED DOCUMENTS.**

**SECTION I - STATUS OF CONTRACT OR ORDER AT EFFECTIVE DATE OF TERMINATION**

| PRODUCTS COVERED BY TERMINATED CONTRACT OR PURCHASE ORDER (a) | | FINISHED: PREVIOUSLY SHIPPED AND INVOICED (b) | FINISHED, ON HAND: PAYMENT TO BE RECEIVED THROUGH INVOICING (c) | FINISHED, ON HAND: PAYMENT NOT TO BE RECEIVED THROUGH INVOICING (d) | UNFINISHED OR NOT COMMENCED: SUBSEQUENTLY COMPLETED AND INVOICED* (e) | UNFINISHED OR NOT COMMENCED: NOT TO BE COMPLETED (f) | TOTAL COVERED BY CONTRACT OR ORDER (g) |
|---|---|---|---|---|---|---|---|
| | QUANTITY | | | | | | |
| | $ | | | | | | |
| | QUANTITY | | | | | | |
| | $ | | | | | | |
| | QUANTITY | | | | | | |
| | $ | | | | | | |

**SECTION II - PROPOSED SETTLEMENT**

| NO. | ITEM (a) | TOTAL PREVIOUSLY PROPOSED (b) | INCREASE OR DECREASE BY THIS PROPOSAL (c) | TOTAL PROPOSED TO DATE (d) | FOR USE OF CONTRACTING AGENCY ONLY (e) |
|---|---|---|---|---|---|
| 1 | DIRECT MATERIAL | | | | |
| 2 | DIRECT LABOR | | | | |
| 3 | INDIRECT FACTORY EXPENSE *(from Schedule A)* | | | | |
| 4 | SPECIAL TOOLING AND SPECIAL TEST EQUIPMENT *(SF 1428)* | | | | |
| 5 | OTHER COSTS *(from Schedule B)* | | | 256,435 KD | |
| 6 | GENERAL AND ADMINISTRATIVE EXPENSES *(from Schedule C)* | | | | |
| 7 | TOTAL COSTS *(Items 1 thru 6)* | | | | |
| 8 | PROFIT *(Explain in Schedule D)* | | | | |
| 9 | TOTAL *(Items 7 and 8)* | | | | |
| 10 | DEDUCT FINISHED PRODUCT INVOICED OR TO BE INVOICED* | | | | |
| 11 | TOTAL *(Item 9 less Item 10)* | | | 256,435 KD | |
| 12 | SETTLEMENT EXPENSES *(from Schedule E)* | | | | |
| 13 | TOTAL *(Items 11 and 12)* | | | | |
| 14 | SETTLEMENTS WITH SUBCONTRACTORS *(from Schedule F)* | | | | |
| 15 | GROSS PROPOSED SETTLEMENT *(Items 13 thru 14)* | | | | |
| 16 | DISPOSAL AND OTHER CREDITS *(from Schedule G)* | | | | |
| 17 | NET PROPOSED SETTLEMENT *(Item 15 less 16)* | | | | |
| 18 | ADVANCE, PROGRESS & PARTIAL PAYMENTS *(from Schedule H)* | | | | |
| 19 | NET PAYMENT REQUESTED *(Item 17 less 18)* | | | | |

*Column (e), Section I, should only be used in the event of a partial termination, in which the total cost reported in Section II should be accumulated to date of completion of the continued portion of the contract and the deduction for finished product (Item 10, Section II) should be the contract price of finished product in Column (b), (d), and (e), Section I.

NOTE: [illegible] inventory schedule (SF 1428) for allocable inventories on hand at date of termination (See 49.206).

(When the space provided for any information is insufficient, continue on a separate sheet.)

**SCHEDULE A - INDIRECT FACTORY EXPENSE** *(Item 3)*

| DETAIL OF EXPENSES | METHOD OF ALLOCATION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

NOTE: Individual items of small amounts may be grouped into a single entry in Schedules B, C, D, E, and G.

**SCHEDULE B - OTHER COSTS** *(Item 5)*

| ITEM | EXPLANATION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|---|
| Demurrage charges--for period Nov. 1 | 2004 to March 31, 2005 | 298.435 KD | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**SCHEDULE C - GENERAL AND ADMINISTRATIVE EXPENSES** *(Item 6)*

| DETAIL OF EXPENSES | METHOD OF ALLOCATION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**SCHEDULE D - PROFIT** *(Item 8)*

| EXPLANATION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

(Where the space provided for any information is insufficient, continue on a separate sheet.)

SCHEDULE E - SETTLEMENT EXPENSES *(Item 12)*

| ITEM | EXPLANATION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
| --- | --- | --- | --- |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

SCHEDULE F - SETTLEMENTS WITH IMMEDIATE SUBCONTRACTORS AND SUPPLIERS *(Item 14)*

| NAME AND ADDRESS OF SUBCONTRACTOR | BRIEF DESCRIPTION OF PRODUCT CANCELED | AMOUNT OF SETTLEMENT | FOR USE OF CONTRACTING AGENCY ONLY |
| --- | --- | --- | --- |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

SCHEDULE G - DISPOSAL AND OTHER CREDITS *(Item 16)*

| DESCRIPTION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
| --- | --- | --- |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

(If practicable, show separately amount of disposal credits applicable to acceptable finished product included on SF 1428.)

(Where the space provided for any information is insufficient, continue on a separate sheet.)

**SCHEDULE H - ADVANCE, PROGRESS AND PARTIAL PAYMENTS** *(Item 19)*

| DATE | TYPE OF PAYMENT | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

(Where the space provided for any information is insufficient, continue on a separate sheet.)

**CERTIFICATE**

This is to certify that the undersigned, individually, and as an authorized representative of the Contractor, has examined this termination settlement proposal and that, to the best knowledge and belief of the undersigned:

(a) AS TO THE CONTRACTOR'S OWN CHARGES. The proposed settlement (exclusive of charges set forth in Item 14) and supporting schedules and explanations have been prepared from the books of account and records of the Contractor in accordance with recognized commercial accounting practices; they include only those charges allocable to the terminated portion of this contract; they have been prepared with knowledge that they will, or may, be used directly or indirectly as the basis of settlement of a termination settlement proposal or claim against an agency of the United States; and the charges as stated are fair and reasonable.

(b) AS TO THE SUBCONTRACTORS' CHARGES. (1) The Contractor has examined, or caused to be examined, to an extent it considered adequate in the circumstances, the termination settlement proposals of its immediate subcontractors (exclusive of proposals filed against those immediate subcontractors by their subcontractors); (2) The settlements on account of immediate subcontractors own charges are fair and reasonable, the charges are allocable to the terminated portion of this contract, and the settlements were negotiated in good faith and are not more favorable to its immediate subcontractors than those that the Contractor would make if reimbursement by the Government were not involved; (3) The Contractor has received from all its immediate subcontractors appropriate certificates with respect to their termination settlement proposals, which certificates are substantially in the form of this certificate; and (4) The Contractor has no information leading it to doubt (i) the reasonableness of the settlements with more remote subcontractors or (ii) that the charges for them are allocable to this contract. Upon receipt by the Contractor of amounts covering settlements with its immediate subcontractors, the Contractor will pay or credit them promptly with the amounts so received, to the extent that it has not previously done so. The term "subcontractors," as used above, includes suppliers.

NOTE: The Contractor shall, under conditions stated in FAR 15.403, be required to submit a Certificate of Current Cost or Pricing Data (see FAR 15.406-2 and 15.408 Table 15-2).

| NAME OF CONTRACTOR | BY (Signature of authorized official) | |
|---|---|---|
| GULF GROUP GENERAL ENTERPRISES CO. W.L.L. | [signature] | |
| | TITLE: General Manager | DATE: 1/12/2005 |
| NAME OF SUPERVISORY ACCOUNTING OFFICIAL | TITLE | |