# UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **GULF GROUP GENERAL ENTERPRISES CO. W.L.L.**<br><br>**Plaintiff,**<br><br>**VERSUS**<br><br>**THE UNITED STATES OF AMERICA**<br><br>**Defendant,** | **No. 07-82C**<br>**(Judge Horn)** |

## RESPONSE IN OPPOSITION TO MOTION TO SUSPEND PROCEEDINGS

MAY IT PLEASE THE COURT:

Between November 2004 and March 2005 Gulf Group delivered bottle water to military camps in Iraq. In doing so Gulf Group's trucks were required to travel to and from Iraq with military convoys and therefore were subject to the schedules of the convoys. This claim is for recovery of delay charges (demurrage) incurred as a result of the trucks being delayed on their trips to and from Iraq because of delays caused by the fault or order of the Government.

The Government has asked the Court to stay this proceeding pending resolution of the Army's investigation of Maj. John Cockerham and whether companies to which he awarded contracts to supply bottle water bribed him to award the contracts. Even though the Government did not plead fraud as an affirmative defense to this suit and even though Gulf Group has not been indicted, has not been the subject of a grand jury investigation, and has not even been interviewed about the charges against the Major, the Government now suggests that Gulf Group is among those under investigation. Initially, we were inclined to refrain from opposing this motion because we appreciate the need for criminal proceedings to go forward unhampered by related civil litigation. Our thought was that it would not be unreasonable to stay this proceeding for the 3 months

mentioned in the Declaration of Larry Scott Moreland – not the 6 months the Government requests in its motion– so that the Government can decide whether to bring criminal charges against Gulf Group. Indeed, that thinking is based on the fact that Gulf Group wants to cooperate in any investigation and does not want this proceeding to hamper the speedy resolution of that investigation.

However, as we reflected further, the more apparent it became that the Government is not seriously considering that Gulf Group bribed Maj. Cockerham but instead is trying to delay payment that is rightfully due Gulf Group. We reached that conclusion for three reasons. The first is that throughout the 9 months that this suit has been pending, the Government's attorneys have consistently tried to procrastinate and drag out the proceedings[1] so this motion looks suspiciously like yet another attempt to defer reaching the merits. The second is that bribery of Maj. Cockerham cannot be involved in the formation of this contract because Gulf Group contracted with Gloria Davis, another Army contracting officer, for this contract to supply bottled water. The third is that Gulf Group is the plaintiff in 3 other cases before the Court of Federal Claims based on cancellation of 3 contracts to supply services, ***and Maj. Cockerham is the officer who cancelled those three contracts.*** Surely, if Gulf Group were bribing Maj. Cockerham, he would not be cancelling the very contracts that would serve as his source of bribes. Indeed, the only logical conclusion is that Gulf

[1] Even though the Government had 60 days as a matter of law to answer this suit, its lawyer sought an extension claiming he was too busy, and as a courtesy we agreed to a 30 days extension which this court granted. When that extended time was due to expire, the Government attorney threatened to file a motion to dismiss on the ground the court did not have jurisdiction under the Contract Dispute Act because plaintiff had not exhausted its administrative remedies. In lieu of filing a motion to dismiss the Government agreed to file a joint motion to stay so that the matter could be referred to the contracting officer for a decision. This court then denied that joint motion to stay and set the discovery deadline. We then served interrogatories, requests for admissions and request for documents. The Government then asked for and was given an extension to respond to those requests, and when that was about to expire (4 days before), they filed this motion.

Group would not pay bribes and so Maj. Cockerham wanted to get rid of that company. The inescapable conclusion is that in bringing this motion, the Government is simply trying to string out payment under the pretext of investigating Gulf Group. Accordingly, we suggest that the Court should not grant this motion because the Government cannot sustain its burden under *St. Paul Fire & Marine Ins. Co. v. United States,* 24 Cl. Ct. 513, 515 (1991).

***There Is No Relation Between this Case and Any Criminal Prosecution by the Government***

In its attempt to justify yet another delay of Gulf Group's case and avoid having to pay the $1,035,802.23 plaintiff is claiming, the Government in its motion contends that Gulf Group's civil action here is closely related to the ongoing criminal investigation against Maj. Cockerham and other suspected contractors, and that the two matters involve substantially similar issues. Nothing can be further from the truth. The issues in this civil case are not related and substantially similar to those in the criminal investigation. The issues in dispute instead can be summarized as follows: (1) whether Gulf Group's trucks were required to travel to and from Iraq and Kuwait with the military convoys; (2) whether Gulf Group's trucks were delayed; (3) what caused the delays in the convoys; (4) whether the delays were attributable to the Government; and (5) the amount of compensation to which Gulf Group is entitled. None of those issues relate to the criminal charges and investigation the Government alleges.

Further, the contract involved in this litigation was awarded by Gloria Davis not Maj. Cockerham.[2] So quite obviously no bribery of the Major can be involved in the initial award.

[2] The particular contract between the Government and Gulf Group for the delivery of bottle water was signed by Gloria Davis. See ¶24 of Exhibit "A" to Plaintiff's Complaint. Maj. Cockerham was one of many Contracting Officers who from time to time issued Calls requesting the supply of bottle water.

Moreover, the contract was awarded after public bidding so the unit price was fixed by the market place not by Maj. Cockerham.

In this case Gulf Group is seeking recovery of demurrage incident the supply of bottle water over a 5-month period – November 2004 through March 2005. Gloria Davis issued the call for November of 2004. Maj. Cockerham issued the calls for December of 2004 and January and February of 2005. Roderick Sanchez issued the call for March of 2005.[3] Consequently, at the very least, these proceedings should go forward on 2 of the 5 calls. And that very fact serves to support our suspicion that this motion is really just a delaying tactic.

Moreover, the Government cannot seriously believe that Gulf Group bribed Maj. Cockerham. As previously mentioned, Gulf Group has pending three other claims under Contract Disputes Act – Case Nos. 06-835, 06-853 and 06-858. Each of those cases involves contracts awarded to Gulf Group by contracting officers other than Maj. Cockerham. Each of those contracts were later ***cancelled by Maj. Cockerham for convenience***. And then he awarded the same jobs to other contractors.[4] Why would he do that, if Gulf Group was one of his bribing contractors? For this reason we are confident and certainly hopeful that Mr. Moreland will promptly investigate Gulf Group and clear them of all suspicion. Additionally, Maj. Cockerham is the officer who signed t he receipt for Gulf Group's certified claim, but the claim was never processed. If he was taking bribes

---

[3] See BPA Calls No. 0002, 000201, 000202, attached herein *in globo* as Exhibit. "1", BPA calls 0003, and 0004,, and 0005, Exhibits "2, 3 and 4". Other officers were involved in other calls after that, but those are not at issue here.

[4] Whenever the Government cancels for convenience, it cannot then award the business to someone else without paying the cancelled contractor its expectation profits because, as recognized in the case law, the Government has diverted business away from the rightful contractor *Torncello v. U.S.*, 231 Ct.Cl. 20, 681 F.2d 756 (1982); *Ace Federal Reporters, Inc. v. Barram*, 26 F.3d 1329 (Fed. Cir. 2000); *Locke v. U.S.*, 51 Ct.Cl. 262, 283 F.2d 521 (1960)

from Gulf Group, surely he would process and pay Gulf Group's claims. Clearly, the evidence does not support any allegations that Gulf Group was involved in bribing Maj. Cockerham.

The fact that the Government bases this motion in large measure on the fact that Maj. Cockerham raised the price of bottled water corroborates our suspicion that this motion is just a delaying tactic. This argument is illogical in the extreme. In the first place, the price was raised ***after*** Gulf Group supplied bottle water from November 2004 to March 2005 – the bottle water which is the subject of this suit.[5] Secondly, the Major did so to avoid future demurrage claims. The price increase did not become effective until April of 2005. Third, Gulf group received other Calls for supply of bottle water after April 2005, and none of them were from Maj. Cockerham. Fourth, thirteen other contractors were used to supply bottle water and the price was increased equally to all of those other contractors, so that surely bribery could not be perpetrated on so grand a scale.

The Government's motion presents other evidence of delaying tactics – this time on the form of bogus legal argument. The Government tries to link the raise in the price of the bottle water with this lawsuit by urging at page 5 of its motion that Maj. Cockerham had no good reason to raise the price because the Government is not liable for demurrage charges under the contract. The Government's attorney evidently is not familiar with the Federal Acquisition Regulations. FAR 52.247-34 specifies that when, as here, goods are supplied FOB Destination, demurrage is not due unless the demurrage charge is caused by an act or order of the Government. Here the delays giving rise to demurrage resulted from the Government ordering military convoys with lengthy stops and

---

[5] On April 5, 2005 Maj. Cockerham sent an email to *all* bottle water vendors informing of the Government's offer to increase the price for the bottle water in exchange for the vendors not making further claims for demurrage from April 2005 onward. (See Exhibit "C" to Plaintiff's Complaint). Gulf Group accepted the Government's offer so that there were no additional claims for demurrage after April 2005.

by delaying the return of the trucks. Accordingly, Maj. Cockerham, whether he be an acceptor of bribes or not, was wise in raising the price of water in exchange for the suppliers' agreement to forego demurrage. No link then exists between this suit and the price increase.

Finally, on July 6, 2007 the Government filed an answer in this case and it did not assert any counterclaims against Gulf Group, and the Government has been investigating Maj. Cockerham since at least December of 2006 or possibly earlier than that, so that by now – some nine plus months later– the Government should know whether it has any claims against Gulf Group or any of the other vendors. Be that as it may, it would seem extremely unfair to allow the Government yet another six months and plus to determine whether it has an action against Gulf Group for matters that are *unrelated* to this litigation. The Government simply has no sound reason to justify sacrificing Gulf Group and precluding it from obtaining a prompt resolution of its claim, so that its self-serving delaying tactics should not be allowed by this Court.

***No Harm Will Be Caused If this Matter Proceeds Through its Normal Course***

This matter can proceed through discover and trial without interfering with whatever criminal investigation the Government is or will be undertaking, and delaying this matter further is not necessary. Two key witnesses have already testified in this matter regarding relevant issues pertaining to Gulf Group's demurrage claim, and none of the issues addressed in those two depositions have any relation to any criminal charges or criminal conduct of Maj. Cockerham for which he is being tried or for which the Government alleges it requires a stay of this case. All issues addressed in those depositions relate to whether the vendors were required to travel with the military convoys and thus be subjected to the schedule of the convoys, whether delays were incurred and the reasons for the delays in the convoys.

As for Maj. Cockerham, who is now in jail awaiting trial, any discovery would be restricted to what disposition was given to the certified claim filed by Gulf Group in December of 2005. Maj. Cockerham signed the receipt of that certified claim, but it was never processed or paid,[6] and what information he can supply, if any, as to why there were delays in the delivery of the bottle water to Iraq and in the return of the trucks. None of those issues relate to Maj. Cockerham's alleged criminal activities or that of any of the contractors.[7]

Further, the additional discovery that Gulf Group has sought in this case does not have any relation to any allegations of fraud on the part of government officers or government contractors.[8] We have already requested the Rule 30(b)(6) deposition of the Government representatives from

[6] On December 15, 2005 Gulf Group's certified claim for demurrage was received by Maj. Cockerham as one of the Government's Contracting Officers. Maj. Cockerham did not issue a final decision on that claim and no response whatsoever was provided to Gulf Group's settlement offer that accompanied the claim. Therefore, under 41 U.S.C. §§605(c)(1) and (c)(3), the claim was deemed denied and this litigation followed.

[7] On August 2, 2007 we sent the attached letter to defendant's counsel Mr. Robert Biggler (Exhibit. "5") in which at page 3 we suggested that we may dispense of the need to depose Maj. Cockerham while he is in jail provided the Government stipulates to some basic matters such as the authenticity of the documents issued by him in connection with Gulf Group's claim for demurrage. No response was ever provided by Mr. Biggler or any other Government representative, but in the spirit of reaching a prompt resolution of the matter we herein renew our offer to waive the deposition of Maj. Cockerham in exchange for those stipulations.

[8] On August 7, 2007 the attached Requests for Admissions (Exhibit "6") Interrogatories (Exhibit "7") and Request for Production of Documents (Exhibit "8") were served on the Government seeking to streamline and reduce the issues for trial. The answers were initially due September 10, 2007, and an extension of time was granted until September 17, 2007 but no answer or objection to those requests for admissions and other discovery requests was ever provided, for which the Admissions are deemed admitted as provided under RCFC 36(a), and the objections waived under Rules 33(b)(4).

whom we expect to obtain information regarding the cause of the delays among others.[9] To that effect on August 30, 2007 we served the attached Rule 30(b)(6) Notice of Deposition of the defendant (Exhibit "9") which was set for September 27, 2007 in which we specify the matters of the deposition. None of the matters specified in that notice can be said to relate to any criminal activity on the part of the Government officials or the bottle water vendors.[10] Therefore, delaying this matter further until the Government completes its investigation into matters that have no relation whatsoever with the issues in dispute here is unreasonable and will cause Gulf Group an undue burden and substantial prejudice.

Gulf Group has been deprived of the use of its money for long enough, and interest which may or may not fully compensate Gulf Group for its loss continues to accrue every day this case is delayed. The Government now seeks to further delay the resolution of this matter for reasons that are unrelated to the issues in dispute here. Because by its own actions the Government has unduly delayed the expeditious resolution of this dispute and has failed to provide Gulf Group with prompt payment of the demurrage charges incurred, no further delays should be allowed here. The discovery deadline in this matter is merely 7 days away from today (22 days away from the time when the Government filed the motion to suspend these proceedings), so that the case should be ready for trial

---

[9] Mr. Megbel Altawash and LTC Shoemake both testified that the trucks were detained for extended periods of time at the military camps in Iraq after the bottle water had been discharged so that there were delays in the return of the trucks. Gulf Group's trucks were not allowed to travel back without the convoy, or sometimes were used by the Government to carry military equipment back to Kuwait without first obtaining Gulf Group's consent and without compensation.

[10] No protective order or motion to quash the Notice was sought by the Government who simply sent the attached letter (Exhibit "10") informing that it will not appear because of the pendency of this motion.

within a short time and no valid reason exists to further delay this matter.[11] Therefore, granting an indefinite suspension of this case in addition to being unjustified, will substantially prejudice Gulf Group.

***The Cases Upon Which the Government Relies Are Distinguishable and None of the Factors Required for the Suspension of the Case Are Met Here***

In its motion the Government refers to several cases for the proposition that this matter should yield to the alleged criminal investigation the Government is conducting of Maj. Cockerham and the bottle water vendors, including Gulf Group. However, none of those cases apply here and are clearly distinguishable.

The case of *Luigi Goldstein, Inc. v. United States*, 217 Ct. Cl. 733, *cert. denied*, 439 U.S. 1002 (1978) involved a situation where there was already pending a grand jury investigation against the plaintiff and the court found that the issues in the civil case were related to the criminal investigation. That is not the case here. The Government has not demonstrated, and there is no information that a grand jury has been impaneled or that a grand jury investigation has been commenced against Gulf Group, and the issues in dispute are not related to any criminal charges against Gulf Group. Therefore, the facts of the *Luigi Goldstein* case are distinguishable. Also, the Government cites the case of *Litton Systems, Inc. v. United States* , 215 Ct. Cl. 1056 (1978). In that case the Government obtained an indictment which was later dismissed due to prosecutorial misconduct on the part of the Government and was pending appeal to the Fourth Circuit. In the

[11] As previously stated two depositions have already been taken of key fact witnesses, and two more are anticipated of the representative of the defendant with knowledge on the matters specified in the attached Exhibit "9", and possibly of Maj. Cockerham depending on the Government's willingness to stipulate. Additionally, Interrogatories and Requests for Production of Documents have been served by both parties.

meantime the Government sought a suspension of the civil case in which the Government's defense relied upon the criminal charges in the indictment that was under appeal. The Court in *Litton* allowed a short stay of the civil case as a matter of comity towards the Court of Appeals but did not resolve the merits of the motion to suspend. In that respect the Court stated

> We need not now decide whether these considerations would require suspension of the civil proceedings until the very end of the potential criminal prosecution. It is sufficient for the moment that we wait for the ruling of the Fourth Circuit (we understand that the appeal is to be argued shortly). As a matter of comity and for the pragmatic benefits that may accrue from a clarification of the issues by the court's decision, we will stay these proceedings until the appeal has been decided.
>
> * * * * *
>
> As noted above, our decision at this time does not intimate the relative weight we give to a live criminal proceeding vis-avis a parallel civil proceeding.

Therefore, the *Litton* case provides no guidance here and is nevertheless distinguishable because there is no actual indictment against Gulf Group here, and more importantly, the facts of both matters are unrelated. To defend this case the Government is not relying in any allegations of fraud or illegal conduct on the part of Gulf Group. No counterclaim has been asserted in that respect and no affirmative defense even hits such a defense. Accordingly, reliance on the *Litton* case is misplaced.

Next the Government relies on *Peden v. United States*, 206 Ct. Cl. 329, 512 F. 2d 1099 (1975) In *Peden*, the Plaintiff's criminal investigation and indictment was issued some 5 months before the plaintiff filed his civil suit, and the court's justification for the "freeze" of the civil proceeding in favor of the criminal prosecution contemplated that "civil proceedings constitute improper interference with the criminal proceeding ***if they churn over the same evidentiary material***." (Emphasis added) That case is distinguishable in that here the Government has not

obtained any indictments or filed any formal charges against Gulf Group, and the possibility of ever doing so is too remote and unlikely. More importantly, as explained earlier, the evidentiary material needed for this case is not related to what the Government claims to be the reasons for investigating Gulf Group. Therefore, there is no overlap in the discovery as it was the case in all of the cases the Government relies upon.

Further, the Government also relies on *Ampetrol, Inc. v. United States*, 30 Fed. Cl. 320 (1994) which in turn relied on *St. Paul Fire and Marine Insurance v. U.S.*, 24 Cl.Ct. 513, 515 (1991) and *C3, Inc. v. United States*, 5 Cl. Ct. 659, 660 (1984) stating that the three guiding factors or hurdles set by that court are satisfied here. The Government is wrong.

The first hurdle – *that both matters involve issues that are related and substantially similar*– has already been addressed in the first section of this memorandum where we demonstrated hat there is no relation between the issues in dispute here and the criminal charges or criminal investigation alleged by the Government, and also that the issues are not substantially similar so as to justify suspending this matter. Therefore, that factor is not applicable here.

As for the second hurdle – *showing by the movant of hardship or inequity if the civil action goes forward* – the Government has not made any such showing here. All that the Government alleges is that "If the plaintiff is allowed to conduct civil discovery, plaintiff may be able to use the broader discovery available in the civil case to aid it in its defense of the criminal case. Moreover, the Government needs to wait until the investigation is completed to determine the extent of any possible counterclaims against Gulf Group." (Government's Motion p. 5) The hardship that the Government talks about is not so. By continuing with this matter no prejudice will be caused to the Government but instead to the plaintiff as it is being prevented from obtaining discovery that is

relevant to its case that the Government was at fault in causing the delays. A quick glance at the discovery that has been served on the Government in this case will reveal that Gulf Group is not seeking to obtain information that relates to any criminal activity on the part of the Government-appointed Contracting Officers or other vendors. The discovery strictly addresses the issues in dispute here which as previously stated have no relation with any criminal investigation the Government may be conducting into any allegations of fraud. (See Requests for Admissions, Interrogatories and Requests for Production of Documents, Exhibits "6-8") Additionally, the situation that was present in the *Ampetrol* and *St. Paul* cases regarding the overlap of witnesses and documents is not present here. Accordingly, by allowing this matter to go forward no prejudice or hardship will be caused to the Government and the second hurdle is not satisfied.

With respect to the third and last hurdle – *that the duration of the requested stay is not immoderate or unreasonable*– we submit that the stay the Government requests is extremely unreasonable inasmuch as it is not even clear that the stay will be for the six months the Government mentions.[12] In this respect, at page 5 of its Motion the Government states: "...the Government is not asking for an unreasonable stay but only a six month stay which will allow the Court to reevaluate the situation in six months depending on the progress of the criminal case ..." so what the Government is really asking, is for an extension that can extend for more than six months because "depending" on the progress of the criminal case the stay can be prolonged further. The stay required therefore is to uncertain and open-ended. Moreover, we submit that staying this matter for six

[12] The Government's request for a 6 month stay is inconsistent with the statement by Mr. Moreland who at paragraph 7 of his Declaration indicates that he expects to make a determination on whether to charge Gulf Group by the end of this year (3 months from now), so that the 6 months the Government request is unfounded.

months is unreasonable and not justified. When the Government filed its motion to suspend these proceedings the case was merely 22 days away from the close of discovery which is set for October 5, 2007, and there is very little discovery that remains to be completed. [13] Therefore, the case can be ready for trial in less than 6 months.

Finally, resolving Gulf Group's case here before the Government has decided whether to file any charges against Gulf Group would not interfere with the Government's investigations. The issues in dispute here, and for which discovery will be obtained – as if we had not said it enough– have no relation to the validity of the contract awarded to Gulf Group or the legitimacy of the increase in the price for the bottle water. Accordingly, no just reason exists for delaying this matter further.

**CONCLUSION**

For the above stated reasons the Government's motion to suspend this proceedings shall be denied. There is no relation between the issues involved here and the alleged criminal investigation. No hardship has been demonstrated will result if the discovery in this matter is allowed to proceed as planned, and the request for a 6 month stay is unreasonable and will result in substantial prejudice to Gulf Group who is but a victim of the Government's failure to pay its debts.

Dated: September 28, 2007

Respectfully submitted,

[13] As we mentioned earlier, the Government was due to file its responses to our discovery requests on September 17, 2007 (4 days including the weekend before this motion was filed) so that the Government's responses should have been ready or at least nearly completed. Also, we were set to travel to Washington for the Rule 30(b)(6) deposition of the Government's representatives on September 27, 2007, and Plaintiff's responses to the Government's discovery request are not due until October 1, 2007 as they were mailed on August 31, 2007.

s / Iliaura Hands
ILIAURA HANDS (LA # 23115)
MILLER & WILLIAMSON LLC
3150 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
Telephone: (504) 525-9800
Telefax: (504) 525-9820
Email: ili@miller-llc.com

***Attorneys for Plaintiff, Gulf Group General Enterprises Co. W.L.L.***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of September, 2007, a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Iliaura Hands
ILIAURA HANDS