**UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **GULF GROUP GENERAL ENTERPRISES CO. W.L.L.**<br><br>**Plaintiff,**<br><br>**VERSUS**<br><br>**THE UNITED STATES OF AMERICA**<br><br>**Defendant,** | **No. 07-82C**<br>**(Judge Horn)** |

**GULF GROUP'S RESPONSE TO DEFENDANT'S STATUS REPORT**

Pursuant to the Court's May 1, 2008 Order Gulf Group herein submits its response to the Defendant's Status Report of April 23, 2008 and in that respect states as follows.

***1. Major Cockerham's Trial***

In its status report the Government failed to inform when Maj. Cockerham's trial is expected to begin. The Government simply stated that the trial did not go forward on April 21, 2008 as scheduled and that no new trial date has yet been set. Our independent investigation into this matter has revealed no additional information. Therefore, because it is unknown at this juncture if and when Maj. Cockerham will ever go to trial, or even if he will be tried in October when his sister is expected to go to trial, it is extremely unreasonable to put this matter on hold based on such an indefinite and uncertain situation. Accordingly, the Cockerham trial issue requires that this matter move forward so as not to prejudice Gulf Group and, as previously explained, to preserve the sources of proof unrelated to Maj. Cockerham.

***2. Gulf Group's Alleged Criminal Investigation***

In response to Your Honor's question of when the Government expects to complete the investigation of Gulf Group, the Government simply stated that a decision as to whether to proceed with criminal charges will likely not be made until after completion of Maj. Cockerham's trial, which as we pointed out above still remains an uncertain event. Does the Government truly believe it is just to delay resolution of this matter on such an unpredictable situation? We submit that it is unjust to delay this matter

any longer if the Government is not prepared to file formal charges against Gulf Group. As it is there is no specific information that the Government is indeed investigating Gulf Group, and if so, as to when, if ever, the Government expects to conclude the investigation. No sworn statement has been submitted attesting to the fact that an investigation against Gulf Group even continues after Gulf Group's General Manager met with the Government's investigators on January 4, 2008.[1] For that reason this matter should go forward.

Additionally, the Government reports that investigation of Gulf Group also involves numerous other contractors, not just Gulf Group, and that the Government's best estimate is that the investigation is expected to be completed by the end of 2008. Unfortunately no specifics are provided as to the particular investigation of Gulf Group which is the subject of our interest and of Your Honor's question, and it is irrelevant to this case that the Government may be investigating other contractors or that such investigation will require additional time. The fact that other contractors may be the subject of an investigation should have no effect in this case, and the matter should not be delayed on that basis. To put it simply, there is no just reason to further delay this matter on such a general and ambiguous statement that the Government is investigating some other contractors and that the investigation may be concluded by the end of the year. Accordingly, the stay shall be lifted and the case should be allowed to proceed its normal course.

***3. How the Criminal Investigation Relates to this Case***

Turning to the Government's explanation as to how the criminal investigation relates to this case, the Government argues that because Maj. Cockerham is accused of soliciting and taking bribes from some

[1] May we remind the Court that in September of last year the Government submitted the statement of Special Agent Mr. Larry Scott Moreland indicating that he expected to complete the investigation of Gulf Group in 3 months. At Gulf Group's suggestion its General Manager met with Mr. Moreland and other Government investigators in January precisely to expedite any such alleged investigation so that this matter could move forward. Now, nine months after Mr. Moreland's statement and five months after the meeting with Gulf Group, the Government says that it does not know when it expects to conclude the investigation and that it is not yet prepared to make a decision to file charges against Gulf Group. Interestingly, no revised or new statement from Mr. Moreland or other investigator has been submitted in any of the Government's recent memoranda to support the allegation that Gulf Group is even a target of the investigation.

contractors, Gulf Group's claim for demurrage shall be delayed by the mere fact that Gulf Group so happened to be one of the many contractors who supplied bottled water under a contract that was in part managed by Maj. Cockerham. Unfortunately the Government's explanation falls short. The Government fails to tell the Court that the contract was not solely managed by Maj. Cockerham. Another contracting officer, Roderick Sanchez, who issued the call for the month of March 2005, also managed the contract during a portion of the period for which we are claiming demurrage, and he is not being accused of any wrongdoing.

The Government also argues that Maj. Cockerham's decision to increase the price of the bottled water *in lieu* of dealing with demurrage claims is questionable because Maj. Cockerham did not have a legitimate reason to do so inasmuch as the Government is not liable for demurrage. This argument is also wrong and nothing but a red herring. First, contrary to the Government's statement we are not basing our claim in any part on the April 5, 2005 email. That email was attached to the Complaint and mentioned for completeness, so as to disclose all of the facts surrounding the contract. As we have repeatedly indicated, the price increase in the April 5, 2005 email does not change the fact that demurrage had already been incurred, and the claim at issue here does not depend on the new price increase. The claim is for demurrage incurred before the April email was ever issued. Accordingly, the Government's reliance on the April 5, 2005 email to create a connection with the criminal investigation is but a red herring. Second, the Government is wrong to argue that there was no legitimate reason to increase the price *in lieu* of demurrage claims because the Government is not responsible for demurrage under the contract. It is undisputed that the Government drafted the contract with Gulf Group, and that in doing so the Government incorporated FAR 52.247-34 which in turn provides for the recovery of demurrage caused by an act or order of the Government in its contractual capacity. Therefore, claims for demurrage were anticipated under the

contract, and the consideration of the cost to the Government of future demurrage claims was justified.[2] Third, the decision to increase the price was not made solely by Maj. Cockerham, but in consultation and with the approval of "the C-4" which upon information and belief included the entire contracting office at Camp Arifjan, so that Maj. Cockerham was not acting alone. And finally, no apparent advantage was granted to Gulf Group over the other contractors by raising the price of the water because the increase of the price applied to "all" contractors, not just Gulf Group, and Gulf Group could only collect for past demurrage once it had submitted to the claims process, so it was not an automatic award. Therefore, there is no factual or logical connection whatsoever between this case and the Government's criminal investigation of Maj. Cockerham, Gulf Group or any of the other several contractors. The truth of the matter is that Gulf Group agreed to supply bottled water to the Government on FOB terms, that the Government agreed to pay demurrage if there were delays caused by an act or order of the Government, and that by unreasonably delaying the trucks the Government also violated the covenant of good faith and fair dealing implied in every contract. The issues in this case are whether there were delays in the delivery of the bottled water and what caused those delays, not who ordered the increase of the price after the fact, or why was it increased as the Government implies.

Furthermore, as previously explained, Maj. Cockerham was the contracting officer who precisely

[2] The Government claims that the order to have the trucks travel with the convoys which ultimately delayed the trucks was issued by the Government acting in its sovereign capacity and as such it is immune from liability. Putting aside the fact that the "sovereign acts defense" is a mix question of law and fact that should be dealt with at a later time not in the context of this motion, we submit that the Government is wrong to argue that such order involved a sovereign act. The order was merely issued for the exclusive benefit of the military in its contractual and commercial capacity, not as a "public and general" act; and more importantly, the Government's order in question will not be "public and general" within the meaning of the sovereign acts doctrine because the substantial effect of that order was to release the Government from the duty to pay demurrage as provided in the contract, and to release it from the covenant of good faith and fair dealing, not to interfere with the other party's performance and not destroy the reasonable expectations of the other party regarding the fruits of the contract by making it more expensive and burdensome on Gulf Group who incurred the additional expense of demurrage. Accordingly, the sovereign acts defense does not apply here.

cancelled three other contracts that Gulf Group had for services at Camp Arifjan and for which three separate law suit have been filed, so that all logic dictates that Gulf Group was not a payer of bribes to Maj. Cockerham, and thus no relation exists between this case and the investigation the Government is conducting.

***4. The 30(b)(6) Deposition***

There is no reason why the 30(b)(6) deposition cannot go forward on all of the 12 subjects designated in the Notice of Deposition. The Government has only stated an objection with subject No. 10 of the Notice pertaining to the decision to increase the price of the bottled water. In that respect the Government claims that issue is directly related to the criminal investigation involving Maj. Cockerham who will be the likely witness to discuss that topic. The Government however fails to note that the April 5, 2005 email that proposed the increase of the price, reflects that the decision was not solely made by Maj. Cockerham and there were other individuals involved as well. In the April 5, 2005 email Maj. Cockerham states in relevant part

> ...The *C-4 and I* have sit (sic) down and calculated the average claims and came up with an average number of 2.578 KWD to cover the case of water, the delivery plus the demurrage charges. This will make business easier for *us* and it will get your money quicker rather than the claims process. All previous claims prior to 1 APR 05 will continue to be processed. *We* hope that you will find *our* offer more than acceptable with the increase in your quote. (Emphasis in italics added)[3]

During his deposition in this matter LTC Shoemake identified the C-4 as the Coalition Forces Land Component Command contracting office at Camp Arifjan. Therefore, other witnesses from that office can be designated to testify as to that aspect, and if the designated witness or witnesses do not have the most knowledge on the matter, then we are willing to either take that risk or wait until the time when Maj. Cockerham can testify (presumably after his trial or after a plea is entered), or simply withdraw that item

[3] The April 5, 2005 email is attached as Ex. "A"

from the Notice of Deposition. However, to the extent there are potentially capable witnesses to testify on that subject other than Maj. Cockerham, there is no reason why we should make the decision to withdraw that item at this time. In any event, as we have repeatedly mentioned, the increase of the price happened after the period for which demurrage is claimed here, and thus merely incidental to this claim. Therefore, if we don't ever find out why Maj. Cockerham –or any other government official who may have played a part in that decision– decided to increase the price, we are fine with that because as we reflect on the matter that information is simply supplemental.

Finally, since the Government has no objection to the remaining 11 items of the Notice of Deposition, all of which are germane to this claim, there is no reason why the deposition should not be allowed to go forward.

Dated: May 15, 2008

Respectfully submitted,

s / Iliaura Hands
ILIAURA HANDS (LA # 23115)
MILLER & WILLIAMSON LLC
3150 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
Telephone: (504) 525-9800
Telefax: (504) 525-9820
Email: ili@miller-llc.com

***Attorneys for Plaintiff, Gulf Group General Enterprises Co. W.L.L.***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of May, 2008, a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Iliaura Hands
ILIAURA HANDS