UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| GULF GROUP GENERAL ENTERPRISES CO. W.L.L.<br><br>Plaintiff,<br><br>VERSUS<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant, | No. 07-82C<br>(Judge Horn) |

## GULF GROUP'S RESPONSE TO MOTION TO TRANSFER CASE

The Government moves to transfer this case under Rule 40.1 so that it can then be consolidated with the other two cases, Nos. 06-835 and 06-858, pending before Judge Smith.[1] Gulf Group herein opposes the Government's Motion to transfer and the subsequent consolidation with the two other cases for the simple reason that this case and those pending before Judge Smith are not related under RCFC 40.2, and they do not present a common question of law or fact, so that transferring this case and subsequently consolidating it with those other cases under RCFC 42 will not promote judicial economy, but instead will only delay the resolution of Gulf Group's claim, create confusion, and substantial prejudice Gulf Group. Our explanation follows.

### *1. Transfer Is Not Appropriate Because this Case Is Not Related to Those Pending Before Judge Smith*

In support of its Motion the Government argues that transfer is justified because the parties are

[1] The Government's motion under RCFC 40.1 should be addressed based on RCFC 40.2. See RCFC 40.1(b) referring to RCFC 40.2 when a motion to transfer is filed by a party. Further, consolidation is governed by RCFC 42, and although no specific motion to consolidate has been filed, under RCFC 42.1 the Government's Motion to transfer under RCFC 40.1 automatically requires consideration of the appropriateness of consolidation under RCFC 42. In principle we are not concerned with the transfer to Judge Smith because we consider that all Judges in this Court are equally capable of fairly resolving this case. However, it is with respect to consolidating the case that we have a problem. Nevertheless, because we believe that neither transfer nor consolidation is appropriate here, this opposition addresses both matters.

identical, Major Cockerham and representatives of Gulf Group will be witnesses in all cases, and the issues regarding the continuation of the stay are the same.[2] The Government however overlooks a more fundamental aspect involving transfer and subsequent consolidation of cases which in this case requires that the cases be kept separate. Specifically, the Government overlooks the fact that (1) the cases are not related inasmuch as they are not based on the same or similar claims, (2) the contract involved in this matter is distinct and separate from the contracts involved in the matters before Judge Smith, and (3) the cases do not present common issues of fact.

To determine if two or more cases are directly or indirectly related, consideration must be given to RCFC 40.2 which in pertinent part provides:

> **(a) Directly Related Cases.**
> (1) ... Cases are deemed directly related when an earlier-filed case and the action being filed:
> (A) involve the same parties and are based on the same or similar claims; or
> (B) involve the same contract, property, or patent.
>
> * * * * * * *
>
> **b) Indirectly Related Cases.**
> (1) Whenever it appears to a party that there are two or more cases before the court that present common issues of fact and that transfer, consolidation, or the adoption of a coordinated discovery schedule would significantly promote the efficient administration of justice, the party may file a Notice of Indirectly Related Case(s).

Addressing the issue of whether the cases are directly related under RCFC 40.2(a), there is no question here that the cases are *not directly related* because none of the requirements set forth in Rule 40.2(a)(1) are satisfied. The cases do not involve the same or similar claim, and they certainly do not

---

[2] The fact that the issues regarding the continuation of the stay are the same should not be a factor. What matters is the substantive issues that are involved in both cases because once the stay is lifted in all cases we will have to deal with unrelated cases being consolidated, and with the prejudice and confusion that will result.

involve the same contract.[3] The only thing that can be said is the same in all cases is that they involve the same parties, however, that alone is not sufficient to qualify as "directly related cases" under Rule 40.2.

As Your Honor knows, in this case Gulf Group claims that it incurred demurrage expenses in the delivery of the bottled water to base camps in Iraq because of the Government's order that the trucks travel to and from the base camps in Iraq accompanied by military convoys, and for which FAR 52.247-34(2) say Gulf Group should be compensated, and also because the Government's acts and orders delaying the trucks after the bottled water was delivered caused Gulf Group's performance to be more expensive and burdensome, inasmuch as the transportation subcontractor it had retained to do the job charged it demurrage due to these delays.

In the other cases pending before Judge Smith Gulf Group is claiming compensation for losses sustained when the Government arbitrarily cancelled its contracts without just cause, and thereby diverted the business away from Gulf Group. In both of those cases we are arguing that Gulf Group's contracts were cancelled in bad faith, but no cancellation of the contract is involved here, so that to resolve this case the judge does not need to get involved with the reasons why the contracts were cancelled or whether the cancellation was in bad faith. Therefore, the cases do not involve the same or similar claims and are not directly related.

Moreover, the cases are *not indirectly related* under RCFC 40.2(b) because the facts involved

[3] This claim involves a claim for demurrage (delay charges) incurred in the delivery of bottled water to base camps in Iraq under Contract No. W912D1-04-A-0052. The other two cases before Judge Smith, one is for the cancellation of Gulf Group's Contract No. W912D1-04-A-004 for the procurement and supply of general services including tents, portable latrines, lights, water, dumpsters, and electrical generators to Camp Buehring, and the other one is also a cancellation for the supply and service of latrines at Camp Arifjan under Contract No. W912D1-04-P-0932.

in this case are not common to those in the other cases before Judge Smith. The key issues in this case involve:

(1) whether the trucks were required to travel with the convoy system;

(2) whether there were delays in the convoy system;

(3) what caused those delays;

(4) whether the trucks were unreasonably and unlawfully detained by the Government in Iraq;

(5) the reason why the trucks were detained in Iraq;

(6) whether by ordering that the truck remain in Iraq, the Government unlawfully and intentionally interfered with Gulf Group's other contracts; and

(7) whether the Government' s acts and orders delaying the trucks caused Gulf Group's performance to be more expensive and burdensome.

On the other hand, the key issues involved in the other cases include:

(1) the reasons why the contracts were cancelled;

(2) whether the Government was justified in terminating Gulf Group's contracts for convenience;

(2) whether the Government abused its discretion in terminating Gulf Group's contracts;

(3) whether the Government acted in bad faith in terminating Gulf Group's contracts;

(4) whether the Government was arbitrary in terminating Gulf Group's contracts;

(5) whether the Government entered into the contracts with Gulf Group with no intention of fulfilling its promises under the contracts;

(6) whether the Government diverted business away from Gulf Group by cancelling the contracts;

(7) whether Gulf Group incurred damages as a result of the Government's cancellation of the contracts;

(8) whether Gulf Group is entitled to recover anticipated lost profits and consequential damages; and

(9) the amount of damages to which Plaintiff's is entitled.

Therefore, there are no factual similarities significant enough to qualify the cases as being indirectly related, or to justify transfer and consolidation.

Further, having a coordinated discovery schedule will not significantly promote the efficient administration of justice here because of the cases' different procedural posture and lack of factual similarities. See, *Swanson Group, Inc. v. U.S.*, 2005 WL 6115726 (Fed.Cl. Jun 13, 2005) (Transfer of case under RCFC 40.1 was not warranted based on the different procedural posture of the cases, the difference in legal and factual issues, and the potential for causing delay). Discovery in this matter is already underway but the other cases have not made it beyond the filing of the answer.[4] Further, to address the key issues in this case we will call witnesses that have nothing to do with the other cases pending before Judge Smith, and the testimony of those witness who may be common to all matters will nevertheless involve different and unrelated facts. For example, to prove the issues in this case we intend to call Mr. Megbel Altawash, and Lt. Col. Derrick Shoemake, and none of them are expected to testify in the other cases involving the cancellation of the other Gulf Group contracts. Also, we expect to call one or more Government representatives who played key roles in the decision to require that the trucks travel with the convoys and who were involved in the decision to detain the trucks in Iraq on their return trip so that the Government could use them to carry military equipment

[4] Prior to the Government filing the motion to stay, discovery was nearing completion. The discovery deadline was initially set for October 5, 2007 so that there remained merely 22 more days for discovery when the Governmnet file its Motion to Stay on September 13, 2007.

back to Kuwait (a service that was not agreed under the contract), who will be designated in connection with the Rule 30(b)(6) deposition we served before the stay.[5]

The Government has also announced that it will require the deposition of one more representative of Gulf Group, Mr. Saud Altawash, and of Major John Cockerham who is also expected to testify in connection with the other contract cases because he was who cancelled them. The Government argues however that because Mr. Altawash is in Kuwait and Major Cockerham is in jail, it will make sense to consolidate the cases before a single judge to coordinate their depositions. However, we do not see why the depositions of these two witnesses cannot be coordinated (scheduled) just the same with the cases staying separate.[6] In any event, even if Maj. Cockerham is designated as a fact witnesses or as a Government representative pursuant to the 30(b)(6) Notice of Deposition, others will likely be designated as well because the Notice of Depositions includes other areas for which Maj. Cockerham may not be the most knowledgeable person -- such as those pertaining to logistical activities that took place at the base camps in Iraq that prevented the timely return of the trucks -- so that necessarily some other witness or witnesses will have to respond to those questions, and the fact that only two witnesses (Mr. Saud Altawash and Maj. Cockerham), are potential witness in both cases is not sufficient to justify the transfer of this case.

---

[5] We are not sure at this time who the Government will designate to testify with respect to the matters in the Rule 30(b)(6) deposition, and whether any of them will overlap with those needed to testify regarding the cancelled contracts in the other cases. In any event, even if there is an overlap of witnesses we anticipate it to be minimal, and the substance of their testimony will certainly be different.

[6] To schedule depositions of witnesses overseas is not any different as if they were in the country, all that is required is that the parties and the witness agree on a convenient time and place. As for the deposition of Maj. Cockerham who is in jail and for whom leave of court will be required under RCFR 30(a)(2), we do not see why it would be difficult to coordinate that deposition on both matters to take place at the same time, as long as the record is kept separate.

The truth of the matter is that the majority of the witnesses' required in this case (except for perhaps Maj. Cockerham and Mr. Saud Altawash) are not needed to resolve the other matters relating to the cancellation of the contracts, and the witnesses in the other cases are not required to resolve this case. Accordingly, having a coordinated discovery schedule would not significantly promote the efficient administration of justice.

### *2. Consolidation of this Case Is Not Warranted*

One of the primary objectives of consolidation is to prevent separate actions from producing conflicting results, however, that is not the case here where the issues in dispute are not related. Further, with respect to the request to consolidate this case with the other cases pending before Judge Smith, Gulf Group submits that consolidation is not specially appropriate here because this case and those before Judge Smith do not meet the requirements of RCFC 42 as they do not involve a common question of law or fact, and consolidating this case with those other cases will certainly lead to confusion, further delay the resolution of this matter, and cause substantial prejudice to Gulf Group for which the cases should be kept separate.

It is well settled that two inquiries are required to determine whether consolidation should be granted, first, it must be determined whether a common question of law or fact exists in both cases, and second, whether considerations regarding the interest of judicial economy outweigh the potential for delay, confusion and prejudice that may result from consolidation. *Cienaga Gardens v. United States,* 62 Fed. Cl. 28, 32 (2004). The answer to both inquiries in this case militate against consolidation.

First, with respect to the existence of common questions of law or fact, in the preceding section (see pages 4-5 above) we already enumerated the issues that are involved in this case and in the cases before Judge Smith. Therefore, a simple glance at those issues leaves no doubt that none

of the issues are common, and that consolidation is not warranted.

Second, with respect to whether the interest of judicial economy outweigh the potential for delay, confusion and prejudice, Gulf Group submits that it will be substantially prejudiced if this case were to be transferred and subsequently consolidated with the contract-cancellation matters pending before Judge Smith because given the advanced procedural state of this case there is a real potential for valuable time to be wasted. Specifically, we submit that discovery has already advanced in this case and a relatively short time will be required after the stay is lifted to get the case ready for trial, whereas the other cases have not made it beyond the filing of the answer. Therefore, the trial on this case will have to be unnecessarily delayed to wait for the discovery in the other cases to be concluded.

In its Motion to transfer the Government contends that "Only limited discovery has been conducted in this case." With all due respect to Government counsel, we disagree. In our opinion substantial discovery has been conducted in this case prior to the stay, and only limited additional discovery remains to be done. In any event, whether the discovery conducted here is substantial or limited, it nevertheless is at a much more advance stage than the other cases that have not made it beyond the Answer.

Before the Government filed its motion to stay the case on September 13, 2007, two key witnesses had already been deposed, Mr. Megbel Altawash who was the operations manager for Gulf Group in connection with the delivery of bottled water in charge of the logistical aspects of the delivery, and Lt. Col. Derrick Shoemake, who during the pertinent times was the chief of the bottled branch for the Government in charge of making sure that the bottled water flowed into Iraq from three different locations: Turkey, Jordan and Kuwait. Both of these individuals had significant knowledge on how the operation worked and have already provided their testimony in this case prior

to the stay. Also, prior to the stay we served a Rule 30(b)(6) Notice of Deposition of one or more representatives of the Government with the most knowledge on twelve different areas designated in the notice. That deposition was set for September 27, 2007 but it did not take place because of the pendency of the Government's Motion to Stay. Additionally, prior to the Government's Motion to Stay, the parties had already served on each other discovery requests in the form of Requests for Admissions, Interrogatories and Request for Production of Documents. The Government's responses were due on September 17, 2007 (merely 4 days after the Motion to Stay was filed), and Plaintiff's response were due on October 5, 2007 (the same day discovery was to close), but because of the pendency of the Motion to Stay neither party submitted their responses to the discovery. It is expected however that as soon as the stay is lifted both parties will immediately provide their respective responses to discovery because the time to answer them has long passed so that no time should be wasted on that. Further, by the time the Government's Motion to Stay was filed on September 13 there remained only 22 more days until the discovery deadline as set by the Court (see Doc. Rec. # 10), so that the matter was rapidly approaching the completion of discovery just prior to the stay, and there is no reason that same type of schedule cannot be kept once the stay is lifted. Once the stay is lifted all that remains is to take the deposition of the Government under Rule 30(b)(6), and any other witness that the Government requires in order to prepare the case for trial, all of which can be accomplished within a short time. Accordingly, there is no reason to subject this case to the additional delays associated with consolidating it with the other cases that have not made it beyond the filing of the answer. Doing so will substantially prejudice Gulf Group in its right to prosecute its case expeditiously, will likely result in unnecessary delay and will not promote an efficient administration of justice. See, *Entergy Nuclear Indian Point 2, LLC v. U. S.*, 62 Fed. Cl. 798 (2004) (Separate suits

against the United States would not be consolidated, notwithstanding that the contract at issue was the same one in both suits, where first-filed suit was at a significantly more advanced stage than second-filed suit, so that judicial efficiency would not be served by consolidation.); *AT & T Corp. v. U. S.*, 69 Fed. Cl. 547 (2006) (consolidation of case arising from the same series of transactions was not appropriate because it did not share common questions of law and fact, and was in a different procedural posture.)

Finally, Gulf Group submits that given the distinct nature and substance of the cases, consolidating this matter with those pending before Judge Smith will result in unnecessary confusion. As previously mentioned, the facts and legal arguments in both cases are not only different but more importantly unrelated . None of the witnesses expected to testify in this case are expected to testify as to the same issues in the other cases, and vice versa. Also, the cases pending before Judge Smith pertain to two different services (different from each other and different from this case) one of which involved a contract for the supply of general services to Camp Buehring, and the other the supply of latrines to Camp Arifjan. Specifically, the substance of Major Cockerham's and Mr. Altawash's deposition testimony will be different so that taking their testimony on the other cases and this one at once will prove to be extremely confusing.[7] Therefore, additional confusion will be caused if this case were to be handled together with those other two cases involving separate and distinct matters.

---

[7] Because Major Cockerham was who cancelled the contracts involved in the other matters before Judge Smith, it is anticipated the issues to be addressed during his deposition in connection with those other cases will likely be the same and/or will likely apply to all of the contract-cancellation cases, and for that reason it makes sense to keep those cases together. The testimony however will not apply *in any respect* to this case which does not involve a contract cancellation. Furthermore, the testimony that he may provide with respect to this case does not add anything of value to the other cases because the issues are different.

## CONCLUSION

The cases with which the Government suggests this matter should be transferred and subsequently consolidated are not directly or indirectly related, further, a coordinated discovery schedule will not necessarily promote the efficient administration of justice in this case but instead will create confusion, delay and prejudice to Gulf Group because the cases do not present common issues of law or fact and the cases are in a different procedural state. Accordingly, the Government's Motion to Transfer and subsequent consolidation shall be denied.

Respectfully submitted,

s / Iliaura Hands
ILIAURA HANDS (LA # 23115)
MILLER & WILLIAMSON LLC
3150 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
Telephone: (504) 525-9800
Telefax: (504) 525-9820
Email: ili@miller-llc.com
***Attorneys for Plaintiff, Gulf Group General Enterprises Co. W.L.L.***

Dated: August 25, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of August, 2008, a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Iliaura Hands
ILIAURA HANDS